Ronald **LIEDEL** and Elizabeth Liedel, **Plaintiffs–Appellants,**

v.

The **JUVENILE COURT OF MADISON COUNTY, ALABAMA,** and The **Alabama Department of Human Resources, Defendants–Appellees.**

No. 89–7235.

United States Court of Appeals, Eleventh Circuit.

Jan. 16, 1990.

---

E. Ray McKee, Jr., Huntsville, Ala., for plaintiffs-appellants.

William Prendergast, John Coleman Campbell, Alabama Dept. of Human Resources, Montgomery, Ala., for Ala. Dept. of Human Resc.

Don Siegelman, Atty. Gen., Beth Jackson Hughes, Asst. Atty. Gen., Montgomery, Ala., for the Juvenile Court.

Before JOHNSON and EDMONDSON, Circuit Judges, and PECKHAM,* Senior District Judge.

JOHNSON, Circuit Judge:

This case arises on appeal from the district court's dismissal of plaintiffs' section 1983 complaint on February 14, 1989, and the court's denial of their March 2, 1989, Rule 59(e) Motion to Alter, Amend or Vacate Judgment. 707 F.Supp. 486. We affirm.

## I. FACTS

In their complaint, Ronald and Elizabeth Liedel ("the Liedels") alleged that the Madison County, Alabama Department of Human Resources ("the Department") and the Juvenile Court of Madison County, Alabama ("the Juvenile Court"), violated the Liedels' constitutional rights to due process and privacy. The Liedels objected to child custody proceedings brought by the Department in the Juvenile Court, which is a state court in the Alabama judicial system. The Liedels sought relief from the Juvenile

---

* Honorable Robert F. Peckham, Senior U.S. District Judge for the Northern District of California, sitting by designation.

Court's prior rulings against them, an injunction prohibiting the Juvenile Court from continuing to hear the child custody proceeding against them, and damages from the Department.

### A. State Court Proceedings

In late 1987, the Department filed a child custody petition with the Juvenile Court, naming Elizabeth as a party. The petition alleged that her husband, Ronald, was physically and emotionally abusing Elizabeth's son, Charles Sullivan.[1] Elizabeth was served with a summons, but Ronald was not.[2]

On the same day that the petition was filed, the clerk of the Juvenile Court supplied Elizabeth with a preprinted "Notification Of Right To Counsel" form, explaining her right to counsel in the child custody proceeding. Elizabeth filed an affidavit of indigency on January 5, 1988, but on the advice of Ronald, she did not include any of Ronald's assets in the affidavit. The Juvenile Court denied her request for appointed counsel "based on incomplete and inaccurate information given by the applicant."

The Juvenile Court held a hearing on January 26, 1988. The Juvenile Court explained to Elizabeth that as the natural mother of the child she, and not Ronald, was a party to the action and that, as the party, the decision whether to have counsel was hers. Elizabeth did not retain an attorney, and Ronald assisted her in her presentation at the hearing.

Based on his participation in the hearing, the Juvenile Court held that Ronald had made himself a party to the proceedings and would be bound by any holding of the Court. After the January 26, 1988 hearing, the Juvenile Court entered an order committing temporary legal custody of Charles to the Department,[3] ordering Ronald, Elizabeth and Charles to attend family counseling, and taxing costs to Ronald and Elizabeth. On February 10, 1988, Ronald filed a motion with the Juvenile Court to alter, amend or vacate its judgment. The motion claimed that Ronald was not a party to the action, that he was never served, that the Juvenile Court lacked jurisdiction over him, and that he was not financially responsible for Charles. The Juvenile Court denied this motion on February 11, 1988. Ronald appealed the Juvenile Court's decision by filing a writ of mandamus with the Alabama Court of Civil Appeals. The Court of Civil Appeals upheld the Juvenile Court's denial, *Ex parte Liedel*, 534 So.2d 624 (Ala.Civ.App.1988), and Ronald applied for certiorari to the Alabama Supreme Court. This application was denied on December 2, 1988.

On February 10, 1989, the Juvenile Court ordered the Liedels to appear at a hearing on February 24, 1989, for the purpose of reporting their compliance with the Juvenile Court's prior orders.

### B. Federal District Court Proceedings

The Liedels filed this action in the United States District Court on February 14, 1989, four days after the Juvenile Court had ordered the February 24, 1989 hearing. Their complaint asked for a temporary restraining order and a permanent injunction against the Department and Juvenile Court, preventing them from enforcing the Juvenile Court's prior orders and preventing them from issuing further orders against the Liedels. The complaint alleged that the child custody action violated Ronald's constitutional rights because Ronald was not a party to the action, was never served, was not subject to the Juvenile Court's jurisdiction, and was not financially responsible for Charles. The complaint also alleged that the Juvenile Court deprived Elizabeth of her right to counsel by denying her appointed counsel in the child custody proceedings and by permitting

---

**1.** Ronald Liedel is not the father of Charles Sullivan.

**2.** On December 16, 1987, the Juvenile Court directed Ronald to submit to a psychological examination. A copy of this order was served on Ronald.

**3.** This order was conditional on the family's refusing to attend counseling with Charles Sullivan. If the family agreed to attend counseling, legal custody remained in Elizabeth.

Ronald to participate in the January 26, 1988 hearing. On February 14, 1989, the district court denied their motion for a temporary restraining order and dismissed their complaint because the Liedels' allegations failed to trigger the district court's jurisdiction. In a memorandum opinion dated March 2, 1989, the district court denied the Liedels' Rule 59(e) motion to alter, amend or vacate the February 14 judgment. The district court held that principles of equity, comity, and federalism prevented the district court from enjoining the state court proceeding through a section 1983 action, and that the Liedels should pursue their federal constitutional claims through direct appeal of the state court judgment.

The Liedels appeal the district court's dismissal of their complaint. We hold that the Liedels' complaint does not fall within the jurisdiction of the federal district court because it seeks to void a final state court judgment, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and because it seeks to enjoin ongoing state proceedings. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

## II. ANALYSIS

### A. *Effect of the Rooker–Feldman Doctrine*

■ In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), the Supreme Court held that a federal district court may not review the final decisions of a state court of competent jurisdiction. Such review rests solely in the United States Supreme Court. The Supreme Court reaffirmed this principle in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 & n. 16, 103

S.Ct. 1303, 1315 & n. 16, 75 L.Ed.2d 206 (1983). The *Feldman* Court stated,

> [L]ower federal courts possess no power whatever to sit in direct review of state court decisions. If the constitutional claims presented to a United States district court are inextricably intertwined with the state court's denial [of a claim] in a judicial proceeding ... then the district court is in essence being called on to review the state-court decision. This the district court may not do.

*Id.* at 483–84 n. 16, 103 S.Ct. at 1315–16 n. 16. In *Wood v. Orange County*, 715 F.2d 1543 (11th Cir.1983), this Court held that under the *Rooker-Feldman* doctrine, federal district courts may not decide federal issues that are "inextricably intertwined" with a state court's judgment. This is true even if the plaintiff failed to raise the federal issue in the state court. *Id.* at 1546.[4]

In this case, the Liedels' complaint requested that the federal district court enjoin the Juvenile Court from enforcing all of its prior orders in the child custody proceedings. This would effectively nullify those state orders, which became final after the Liedels' petition for writ of certiorari was denied by the Alabama Supreme Court.[5] The Liedels base their claims on the same allegations of deprivation of Elizabeth and Ronald's constitutional rights that the Liedels argued and lost in the Alabama state court proceedings. In fact, Ronald expressed the same objections that he raises here in the motion to alter, amend, and vacate judgment that he submitted to the Juvenile Court on February 10, 1988. Moreover, he based his petition for writ of mandamus to the Alabama appellate courts on the same allegations of deprivation of due process that he raises in his federal court complaint. Elizabeth also

---

**4.** The *Wood* Court did recognize an exception to the *Rooker-Feldman* doctrine where the plaintiff had no reasonable opportunity to raise the issue in the state court. In such cases, the Court reasoned, the plaintiff could not be said to have "failed" to raise the issue in the state court because he had no reasonable opportunity to do so. *Wood v. Orange County*, 715 F.2d 1543, 1547 (11th Cir.1983). The court found that such an issue could not be said to be a part of the

state case or "inextricably intertwined" with the state case. *Id.*

**5.** Ronald had ninety days from the entry of judgment by the Alabama Supreme Court in which to petition the United States Supreme Court for a writ of certiorari. 28 U.S.C.A. § 2101(c).

had the opportunity to raise in the state courts the constitutional objections that form the basis of her federal court complaint. Thus, the Liedels did have an opportunity to raise in the Alabama courts the constitutional objections that form the basis of their federal suit. To the extent that the Liedels' federal court complaint seeks to challenge the final state court judgment, it must be dismissed for lack of jurisdiction under the *Rooker-Feldman* doctrine. *Staley v. Ledbetter*, 837 F.2d 1016, 1017–18 (11th Cir.1988); *Blue Cross and Blue Shield of Maryland v. Weiner*, 868 F.2d 1550, 1555 (11th Cir.1989).

### B. *Effect of Younger*

In *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court held that a federal court should not act to restrain an ongoing state court criminal prosecution. *Id.* at 41, 91 S.Ct. at 749. By abstaining from exercise of their jurisdiction, the federal courts promote the value of comity between the states and the federal government and avoid unnecessary determinations of federal constitutional questions. *Id.* at 44, 52, 91 S.Ct. at 750, 754. In *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979), the Supreme Court held that the principles of *Younger* also apply in the context of state child custody cases involving child abuse.

> [T]he temporary removal of a child in a child-abuse context is ... "in aid of and closely related to criminal statutes." The existence of these conditions, or the

presence of such other vital concerns as enforcement of contempt proceedings, or the vindication of "important state policies such as safeguarding the fiscal integrity of [public assistance] programs," determines the applicability of *Younger–Huffman* [*v. Pursue Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975)] principles as a bar to the institution of a later federal action.

*Id.* at 423, 99 S.Ct. at 2377 (citations omitted). Thus, under *Younger* and *Sims* federal district courts may not interfere with ongoing child custody proceedings.

The Juvenile Court hearing scheduled for February 24, 1989 was part of a state court child custody action in a child abuse context. Ronald was allegedly abusing Charles. The Liedels filed their complaint in the federal district court on February 14, 1989. At that point, they were fully aware that they had been ordered by the Juvenile Court to appear at a hearing on February 24, 1989, to discuss their compliance with the court's orders.[6] Under *Younger* and *Sims*, the Liedels' federal complaint must be dismissed to the extent that it asks the court to enjoin the Juvenile Court from holding further hearings or entering further orders in the child abuse proceeding.[7]

### CONCLUSION

The federal district court lacked jurisdiction to review the past orders of the Juvenile Court. The district court also lacked jurisdiction to enjoin pending Juvenile Court proceedings. Therefore, the district court properly dismissed the Liedels' com-

---

**6.** The date of filing of the federal complaint is the relevant date for purposes of determining *Younger*'s applicability. In *Texaco v. Pennzoil*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987), the Supreme Court held that *Younger* applies if state court proceedings were pending at the time of the filing of the federal complaint. *Id.* at 17, 107 S.Ct. at 1529. The pending state proceedings need not be a single trial that is expected to resolve all issues in a matter. In *Moore v. Sims*, 442 U.S. 415, 424, 99 S.Ct. 2371, 2377, 60 L.Ed.2d 994 (1979), the Supreme Court overruled a district court's holding that because a juvenile action is "multifaceted" and involves no single judicial proceeding it cannot be considered pending litigation for the purposes of *Younger*. The Supreme Court stated that so

long as the plaintiffs had the opportunity to raise their claims in the state proceedings, the federal district court must abstain under *Younger*. *Id.* at 425, 99 S.Ct. at 2378.

**7.** There are exceptions to *Younger* in cases where a party could not have raised his claim in the state court proceeding, *Moore*, 442 U.S. at 425, 99 S.Ct. at 2378, or where the state proceeding is conducted in bad faith. *Id.* at 424, 99 S.Ct. at 2377. These exceptions do not apply to this case because the Liedels had the opportunity to pursue their constitutional claims in the state court proceeding and there is no evidence of bad faith on the part of either the Department or the Juvenile Court.

plaint for lack of jurisdiction.[8]

AFFIRMED.

---

**8.** Because the district court lacked jurisdiction over this complaint, it should not have considered the merits of the plaintiffs' claims. *See* *Moore,* 442 U.S. at 422–23, 99 S.Ct. at 2376–77 (1979).