**Anthony R. MARTIN, III, Anthony R. Martin, IV and Elizabeth I. Martin, Petitioners,**

v.

**Lawton CHILES, Governor, Florida Department of HRS, Defendants.**

No. 91–6322–CIV.

United States District Court, S.D. Florida.

May 14, 1991.

Anthony R. Martin III, pro se.

## ORDER ON EMERGENCY PETITION FOR WRIT OF HABEAS CORPUS

PAINE, District Judge.

This matter comes before the court on the Petitioners' Emergency Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241(c)(3) (DE 1). Having reviewed the record and the law, the court enters the following order for the reasons set forth hereinafter.

### BACKGROUND

On January 17, 1991, the Petitioners, ANTHONY R. MARTIN III ("MARTIN"), ANTHONY R. MARTIN IV ("ANTHONY") and ELIZABETH I. MARTIN ("ELIZABETH"), initiated a lawsuit captioned *Anthony R. Martin III, Anthony R. Martin IV, Elizabeth I. Martin v. Paul Marko III, Debbie O'Reilly, Helga Stew-* art, State of Florida, Case No. 91–8020–CIV–PAINE, in which they sought a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241(c)(3), because a Florida State court judge had ordered ANTHONY and ELIZABETH not to leave the state and MARTIN not to travel with his children outside of Florida as part of a pending child custody action. At that time MARTIN maintained that ANTHONY and ELIZABETH were "hostages of the State of Florida" and that he was a *"de facto* hostage" in that he was forced to choose between his constitutional right to be with his children and his right to leave the state. By order dated January 24, 1991, the undersigned dismissed the Petition stating that:

> given the facts of the case and the type of relief sought, the instant action should be dismissed because (1) federal habeas corpus jurisdiction does not exist; (2) the Petitioners have failed to exhaust available state remedies; (3) the "domestic relations exception" is applicable; and (4) *Younger* abstention is required.

On May 8, 1991, the Petitioner filed the above styled action again seeking a Writ of Habeas Corpus. This time MARTIN contends that as a part of the ongoing child custody action, Florida State court judge Paul Marko III, held an *ex parte* hearing on April 12, 1991, and "ordered the arrest of Anthony and Bessie." According to the Petitioner, shortly thereafter, Palm Beach Police Officers came to his residence and took the children away and they are currently under the control of the Defendant, FLORIDA DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES ("HRS").

Although MARTIN admits that he has been unable to contact the children and does not know their present whereabouts (DE 1, ¶ 2(e) and 8), he alleges that ANTHONY and ELIZABETH have been "abused in state custody," (DE 3) "subjected to brainwashing and intimidation," (DE 3) "experiencing psychological terror," (DE 1, ¶ 2(k)) and are "being held in a filthy, unhygienic location." (DE 1, ¶ 2(k)). Further, he states that his children were seized, not because of matters related to

the custody battle, but as a result of his filing suit against "officials of the State of Florida alleging ... that state employees were engaging in fraud, negligence and malpractice" (DE 1, ¶ 2(j)).[1]

Given the history of this case and the type of relief sought, however, the court is of the opinion that instant Petition should be dismissed for the same reasons as given in the undersigned's denial of their initial application for a Writ of Habeas Corpus, that is: (1) federal habeas corpus jurisdiction does not exist; (2) the Petitioner has failed to exhaust available state remedies; (3) the "domestic relations exception" is applicable; and (4) *Younger* abstention is required.

### 28 U.S.C. § 2241(c)(3)

■ The original view of habeas corpus attack upon detention under a judicial order was confined to determining whether or not the committing court had been possessed of jurisdiction. *Preiser v. Rodriguez*, 411 U.S. 475, 485, 93 S.Ct. 1827, 1834, 36 L.Ed.2d 439 (1973). In 1867, Congress, anticipating resistance to its reconstruction measures and implementation of the post-civil war constitutional Amendments, enacted the Habeas Corpus Act of 1867 to provide a method additional to and independent of direct Supreme Court review of state court decisions for the vindication of new constitutional guarantees. *Fay v. Noia*, 372 U.S. 391, 415–16, 83 S.Ct. 822, 836–37, 9 L.Ed.2d 837 (1963). The Act expanded the scope of the federal habeas remedy in providing that:

the several courts of the United States ... within their respective jurisdictions, in addition to the authority already conferred by law, shall have power to grant writs of habeas corpus in all cases where

any person may be restrained of his or her liberty in violation of the constitution, or of any treaty or law of the United States....

The current version of the Habeas Act is set forth in 28 U.S.C. §§ 2241–2255. Section 2241, by which the instant Petitioner seeks collateral review, contains the basic authorization of the federal courts to issue the writ, with its subsection (c) setting forth the conditions under which the writ may "extend to a prisoner." The statute provides, in relevant part, that:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions....

(c) The writ of habeas corpus shall not extend to a prisoner unless—

(3) He is in custody in violation of the Constitution or laws or treaties of the United States....

Section 2254, dealing specifically with applications "on behalf of a person in custody pursuant to the judgment of a state court," repeats that language.[2] It provides that:

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

It is clear, therefore, not only from the language of §§ 2241(c)(3) and 2254(a), but also from the history of the writ, that the essence of habeas corpus attack by an individual in custody is to secure release from illegal confinement. *Preiser*, 411 U.S. at 484, 93 S.Ct. at 1834. Such collateral attack, however, has not been extended to all

---

**1.** It should also be noted that on May 10, 1991, Petitioner filed an action captioned *Anthony R. Martin v. Paul Marko III, Michael Robinson and Thomas Genung*, Case No. 91–6336–CIV–PAINE, in which he seeks declaratory and injunctive relief. In that case MARTIN names the state judge in the custody proceedings, Paul Marko III, his court-appointed counsel, Michael Robinson, for improper performance and not listening to his requests, and Thomas Genung as he has "suborned perjury during the proceedings."

MARTIN asks that the undersigned "enjoin the defendants from proceeding with their kangaroo court proceedings...."

**2.** Since § 2254 deals specifically with state prisoners, habeas corpus petitions by such individuals are commonly known as "§ 2254 actions," although they also fall within § 2241(c)(3). W. LaFave & J. Israel, *Criminal Procedure* § 27.2 (1985).

instances involving detainment. A notable exception being in the field of domestic relations where the United States Supreme Court in *Lehman v. Lycoming County Children's Services*, 458 U.S. 502, 510–11, 102 S.Ct. 3231, 3236–37, 73 L.Ed.2d 928 (1982), held that federal habeas corpus jurisdiction, under 28 U.S.C. § 2254, could not be invoked where a state had obtained custody of children and involuntarily terminated the parental rights of a natural parent. *See Staley v. Ledbetter*, 837 F.2d 1016 (11th Cir.1988).

Such is also the case here. As part of the ongoing child custody proceedings, it appears as though ELIZABETH and ANTHONY may have been taken into the care of the state. Although MARTIN asked that this court not invade the custody jurisdiction, but rather, release "the children from unlawful" detention, any determination as to whether ANTHONY and ELIZABETH should be released to their father would appear to necessarily involve the issues of child custody and parental rights. Insofar as such a decision would consist of a review of the merits of the state proceedings, and in accordance with *Lehman*, this court, at the present time, will not exercise federal jurisdiction to challenge a state determination as to who and when the children should be released.

### EXHAUSTION OF STATE REMEDIES

■ Even if one were to assume that 28 U.S.C. § 2241(c)(3) could be properly construed in this instance as affording a vehicle for the presentation of a claim such as the Petitioner advances, that avenue of relief becomes available only after all available state remedies have been exhausted. *Huynh Thi Anh v. Levi*, 586 F.2d 625, 633 (6th Cir.1978). Any question of exhaustion should be answered by reference to 28 U.S.C. § 2254(b), *Id.*, and pursuant to that statute, an application for a writ of habeas corpus shall not be granted:

> unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances

rendering such process ineffective to protect the rights of the prisoner.

Consequently, the failure to comply with the exhaustion requirement mandates dismissal of an application for federal habeas relief. *Preiser*, 411 U.S. at 491, 93 S.Ct. at 1837.

Although MARTIN states in paragraph 5 of his Petition that he has sought relief "all the way to the Florida Supreme Court" prior to seeking federal habeas relief, this is viewed as suspect in light of the fact that in other parts of the Petition he states that the custody action giving rise to the instant matter is still pending in the Florida judicial system. Consequently, as it would appear that all available state remedies have not been exhausted, failure to comply with § 2254(b) requires dismissal.

### DOMESTIC RELATIONS EXCEPTION

■ As MARTIN's constitutional claims would appear to arise out of a domestic relations dispute, this action should also be dismissed as an abortive attempt to involve the federal courts in a domestic relations matter best left to the states. More than a century ago, the United States Supreme Court limited the jurisdiction of federal courts with regards to domestic relations matters when it held that "the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *Ex parte Burrus*, 136 U.S. 586, 594, 10 S.Ct. 850, 853, 34 L.Ed. 500 (1890). Policy reasons justifying the limitation of jurisdiction include, *inter alia*, the strong state interest in resolving domestic matters, the competence of state courts in settling family disputes, the possibility of incompatible federal and state court decrees. *Kirby v. Mellenger*, 830 F.2d 176 (11th Cir.1987). As a result, federal courts generally dismiss cases involving divorce, alimony, child custody, visitation rights and enforcement of separation or divorce decrees still subject to state court modification. *Ingram v. Hayes*, 866 F.2d 368 (11th Cir.1988). Constitutional challenges to these types of disputes are appealable to the Supreme Court on direct

review of state-court decisions. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

## YOUNGER ABSTENTION

█ Finally, the court must be compelled to abstain under the precepts of federalism and comity enunciated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Under such principles, a federal court should not act to restrain an ongoing state court prosecution, as abstention promotes the value of comity between the states and the federal government and avoids unnecessary determinations of federal constitutional questions. *Id.* at 44, 91 S.Ct. at 750. Although *Younger* abstention was first articulated in the context of a pending state criminal action, it has subsequently been extended to pending state civil matters, including child custody proceedings. *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979). Recently, in *Leidel v. Juvenile Court of Madison County, Ala.*, 891 F.2d 1542, 1546 (11th Cir.1990), the Eleventh Circuit held that under *Younger* and *Sims* "federal district courts may not interfere with ongoing child custody proceedings."

In view of all the foregoing, it is hereby ORDERED and ADJUDGED that the Petitioners' Emergency Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241(c)(3) (DE 1) is DENIED and this action is DISMISSED. The clerk of court is directed to close this file.

DONE and ORDERED.