Jamie THOMPSON, et al., Plaintiffs,

v.

William D. McFATTER,
et al., Defendants.

Civil Action No. 95–D–653–S.

United States District Court,
M.D. Alabama,
Southern Division.

Nov. 27, 1996.

---

Susan D. Thompson, Headland, AL, for Jamie Thompson.

Robert M. Weinberg, Jeff Sessions, Attorney General, Office of the Attorney General, Montgomery, AL, for William D. McFatter, William E. Robertson, Charles A. Thigpen, Sharon G. Yates, John B. Crawley, Roger M. Monroe.

Joseph C. Espy, III, Melton, Espy, Williams & Hayes, P.C., Montgomery, AL, for Myrtha V. Halliwell, Wade H. Baxley.

Edward M. Young, Dothan, AL, for C. Bruce Adams.

Robert A. Huffaker, Robert Charles Ward, Jr., Alyce S. Robertson, Rushton, Stakely, Johnston & Garrett, Montgomery, AL, for Jack Blumenfeld.

Sharon E. Ficquette, Alabama Department of Human Resources, Legal Office, Montgomery, AL, Michael C. Joiner, State of Alabama, Department of Human Resources, Legal Office, Montgomery, AL, for Glenda Peters.

## ORDER

DE MENT, District Judge.

Before the court are several motions to dismiss: (1) a motion to dismiss filed on June 12, 1995, by defendants Wade H. Baxley and Myrtha V. Halliwell; a motion to dismiss filed on June 15, 1995, by defendants William D. McFatter, William E. Robertson, Charles A. Thigpen, Sharon G. Yates, John B. Crawley, and Roger M. Monroe; a motion to dismiss filed on June 22, 1995, by defendant C. Bruce Adams; a motion to dismiss filed on June 26, 1995, by defendant Jack Blumenfeld; a motion to dismiss, for judgment on the pleadings, or for full or partial summary judgment filed on June 26, 1995, by defendant Glenda C. Peters; and a renewed motion to dismiss filed on July 21, 1996, by defendant C. Bruce Adams.[1] Plaintiffs Jamie Thompson and Kevin Thompson, filed a series of responses to these motions including two responses on July 11, 1995, one on July 18, 1995, one on July 20, 1995, one on July 21, 1995, and one on July 26, 1996.[2] After careful consideration of the arguments of counsel, the caselaw, and the record as a whole, the court finds that the defendants' motions are due to be granted.

## I. JURISDICTION

The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 1367(a). The parties do not contest personal jurisdiction or venue.

## II. FACTUAL BACKGROUND

Plaintiff Jamie Thompson and defendant Myrtha Halliwell were divorced by the Houston County, Alabama Circuit Court on May 25, 1987. First Amended Compl. ("Compl.") ¶ 9. The divorce decree awarded joint custody of their son, plaintiff Kevin Thompson, with Myrtha Halliwell to have physical custody and Jamie Thompson to have summer and weekend visitation rights. *Id.* Once the divorce was final, Jamie Thompson began to contest the custody arrangements under the divorce decree. Jamie Thompson Appellate Br. to Alabama Court of Civil Appeals ("Civil Appeals Br.") at 1–3, Glenda Peters Mot. to Dismiss Ex. H.; *see also* Compl. ¶¶ 1–13. His efforts to increase his visitation rights

---

1. Parties to this action are defendants: Wade H. Baxley, Myrtha V. Halliwell, William D. McFatter, William E. Robertson, Charles A. Thigpen, Sharon G. Yates, John B. Crawley, Roger M. Monroe, C. Bruce Adams, Jack Blumenfeld, and Glenda C. Peters. The plaintiffs are Jamie Thompson in his individual capacity and as the next friend on Kevin Thompson, a minor.

2. The Plaintiffs filed a motion for leave to amend their complaint for the second time on July 24, 1996, which drew three responses in objection. While reserving ruling on this motion, the court notes that the motion to amend has no impact on the ultimate outcome of the present decision.

continued until the filing of the original complaint in this action on May 17, 1995. *Id.* Thompson also engaged in periodic efforts to force greater court supervision of his ex-wife's activities claiming her lifestyle negatively impacted Kevin's development. Compl. ¶ 16. Jamie Thompson's efforts have been largely unsuccessful and have resulted in a net decrease in his visitation privileges. Civil Appeals Br. at 1–3. As part of his efforts, Thompson has sought relief from the Houston County Juvenile Court, the Houston County Circuit Court, and the Alabama Court of Civil Appeals. *Id.* at 3; Compl ¶ 23.

The plaintiffs' complaint alleges that the defendants engaged in a concerted effort to deprive the plaintiffs of their right of association, right to due process, and right to equal protection of the law. Compl. at 2. Specifically, the plaintiffs allege that defendant McFatter in his role as a Houston County District Judge sitting as the Juvenile court acted under the color of state law to violate the plaintiffs' rights of due process and association guaranteed to them by virtue of the Fourteenth Amendment to the United States Constitution. Compl. ¶¶ 14–20. The amended complaint also alleges that defendants Robertson, Thigpen, Yates, Crawley, and Monroe while acting as judges on the Alabama Court of Civil Appeals violated the plaintiffs' constitutional rights by "ratifying and approving the violation of plaintiffs' civil rights by the other defendants." Compl. ¶¶ 21–28. The plaintiffs further allege that Peters and Blumenfeld in their role as agents and employees of the Alabama Department of Human Resources violated the plaintiffs' constitutional rights by acting individually and in concert with McFatter to restrict plaintiff Jamie Thompson's visitation rights. Compl. ¶ 10. Finally, the plaintiffs allege that defendants Halliwell, her attorney Baxley, and Adams who was acting as Kevin Thompson's guardian ad litem, acted in concert with McFatter, Blumenfeld, and Peters to restrict the plaintiffs's constitutional rights.[3] Compl. ¶ 13.

3. The plaintiffs proposed second amended complaint contains two additional state law claims:

## III.  DISCUSSION

While the plaintiffs have continually asserted that this action has nothing to do with the state child custody proceedings, the court finds that this action has everything to do with these state matters. The plaintiffs' claims are nothing more than a collateral attack on a particular set of state court decisions. The court cannot grant plaintiffs' requested relief; the court is prohibited under the *Rooker–Feldman* doctrine from deciding federal claims which are "inextricably intertwined" with a final state court judgment. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 486, 103 S.Ct. 1303, 1316–17, 75 L.Ed.2d 206 (1983); *Blue Cross and Blue Shield of Md., Inc. v. Weiner,* 868 F.2d 1550, 1553 (11th Cir.) (citing *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923) and explaining that the *Rooker* court found review of a final state court decision by a federal district court wrong for two reasons: "(1) district courts can only exercise original jurisdiction, and (2) the Supreme Court has the exclusive authority to review state supreme court decisions for alleged federal law errors"), *cert. denied,* 493 U.S. 892, 110 S.Ct. 239, 107 L.Ed.2d 190 (1989).

The Eleventh Circuit has firmly embraced the *Rooker–Feldman* doctrine and stated on numerous occasions that federal district courts lack jurisdiction to review final decisions of state courts where the purported plaintiffs had a reasonable opportunity to raise their alleged federal claims during the state court proceedings. *See Liedel v. Juvenile Court of Madison County, Alabama,* 891 F.2d 1542 (1990); *Weiner,* 868 F.2d 1550; *Rolleston v. Eldridge,* 848 F.2d 163 (1988); *Staley v. Ledbetter,* 837 F.2d 1016 (1988); *Hollins v. Wessel,* 819 F.2d 1073 (1987); *Wood v. Orange County,* 715 F.2d 1543 (1983), *cert. denied,* 467 U.S. 1210, 104 S.Ct. 2398, 81 L.Ed.2d 355 (1984). In particular, the Eleventh Circuit has consistently held that district courts have no jurisdiction in actions requiring review of state child custody proceedings. *See Liedel,* 891 F.2d 1542

outrage and negligence.

(state child custody proceeding); *Staley*, 837 F.2d 1016 (termination of adoptive parent parental rights); *see also Chrissy F. v. Mississippi Department of Public Welfare*, 995 F.2d 595 (5th Cir.1993) (constitutional claims resulting from child custody proceedings), *cert. denied*, 510 U.S. 1214, 114 S.Ct. 1336, 127 L.Ed.2d 684 (1994).

■ Contrary to the plaintiffs' assertions, the facts of this action fit squarely into the *Rooker–Feldman* doctrine which requires the dismissal of the plaintiffs' federal claims. These claims are a collateral attack on the state trial and appellate court decisions. *See Liedel*, 891 F.2d at 1543, 1545–46 (dismissing § 1983 claims requesting district court to enjoin enforcement of state court child custody orders and damages); *Staley*, 837 F.2d at 1016–18 (affirming dismissal of § 1983 action challenging child custody determinations). The plaintiffs seek to use federal relief in the form of injunctions, declarations, and monetary damages to blunt the force of the final state court decisions.

For instance, in Judge McFatter's case, the plaintiffs request a declaration stating that McFatter has violated the plaintiffs's due process and association rights as well as an injunction enjoining McFatter from continuing to violate these rights. Compl. ¶ 20. This remedy will require the court to review McFatter's rulings, declare them unconstitutional, and then prevent their further enforcement. This result is nothing less than the invalidation of a final state court decision. *See Liedel*, 891 F.2d at 1545 (holding that a

federal order enjoining an state juvenile court from enforcing its prior child custody orders "would effectively nullify those state orders"). In the same fashion, the plaintiffs request similar impermissible relief against the court of civil appeals judges and the other defendants.[4] *See* Compl. ¶ 28.

Therefore, the court finds that the plaintiffs's claims are a collateral attack on the final state court decisions in this action.[5] All that remains is for the court to determine if the plaintiffs had a "reasonable opportunity" to raise their constitutional claims during the course of the state court proceedings. *See Weiner*, 868 F.2d at 1555. The court may determine such an opportunity exists even if a plaintiff does not raise the claim during the state proceeding. *Rolleston*, 848 F.2d at 165. It is enough that the plaintiff could have raised the issue through state appellate procedures. *Id.* When a plaintiff actually appeals to a state court, the Eleventh Circuit has consistently held that a reasonable opportunity existed. *See Rolleston*, 848 F.2d at 165; *Hollins*, 819 F.2d at 1074. Plaintiffs had the opportunity to raise their constitutional claims during their appeal to the Alabama Court of Civil Appeals. While the civil appeals court opinion shows no sign of these claims, it was enough that the plaintiffs had the chance to make such claims. Therefore, the court finds that the plaintiffs had a reasonable opportunity to raise their federal claims to the Alabama appellate courts and further finds that the court lacks jurisdiction

---

4. The plaintiffs' request for declaratory judgment, monetary damages, and an injunction against the remaining nonjudicial defendants also attacks a final state court judgment by forcing many of the critical actors in these proceedings to drop the role the state system requires them to play. For example, it will be difficult, if not impossible, for the child custody decisions involving Kevin Thompson to be implemented if Kevin's guardian ad litem must discontinue any involvement in the proceedings. While the court notes the plaintiffs' contentions that the guardian ad litem has never been involved in this matter, Civil Appeals Br. at 3, the court defers to the state courts' decisions that the guardian ad litem has played his proper role in this matter. Furthermore, if defendant Baxley can no longer advocate for his client, Kevin Thompson's mother Myrtha V. Halliwell, the state court proceedings

will lose their adversarial character which could alter their outcome.

5. By the plaintiffs own admission, these state court decisions are final. Pls.Memo.Br. in Opp'n to Adams' Mot. to Dismiss at 6 ("The state court proceedings referred to by the defendants are completely irrelevant to the present case. . . . it is solely the plaintiffs' decision as to whether there will be any further state court proceedings. There certainly are no proceedings pending in the juvenile court."). Initially, the court questioned the finality of the juvenile court proceedings due to the court of civil appeals' holding that Judge McFatter's decisions on visitation and support were not final. *Thompson v. Halliwell*, 668 So.2d 43 (Ala.Civ.App.1995). However, the court ultimately finds that these decisions are final based upon the plaintiffs' representations.

over the plaintiffs' federal claims due to the *Rooker–Feldman* doctrine.

Based upon its dismissal of the federal claims, the court declines to exercise supplemental jurisdiction over the plaintiffs' remaining state law claims and dismisses them without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

Accordingly, it is CONSIDERED and ORDERED that the defendants' motions to dismiss are be and the same GRANTED so that all of the plaintiffs' federal claims are DISMISSED and that the plaintiffs' remaining state law claims are also DISMISSED without prejudice.

It is further CONSIDERED and ORDERED that all costs herein incurred be and the same are hereby taxed against the plaintiffs, for which let execution issue.