**Sandra BULLARD, Plaintiff,**

v.

**CHRYSLER CORPORATION, Defendant.**

**No. 4:94CV134.**

United States District Court,
E.D. Texas,
Sherman Division.

May 23, 1996.

---

Steven C. Laird, Russell, Turner, Laird & Jones, Fort Worth, TX, Dennis G. Brewer, Sr., Brewer & Brewer, Irving, TX, E. Todd Tracy, Tracy & Girards, Dallas, TX, for plaintiff.

Burgain Garfield Hayes, Kenneth J. Ferguson, Clark, Thomas & Winters, P.C., Austin, TX, for defendant Chrysler Corp.

Robert Richard Roby, Russell Hendrix Oden, Gwinn & Roby, Dallas, TX, for respondent E. Todd Tracy.

William Mark Midkiff, Watson & Caraway, Fort Worth, TX, for intervenor-plaintiff State Farm Worker's Compensation–Texas.

## MEMORANDUM OPINION and ORDER

PAUL N. BROWN, District Judge.

On January 18, 1996, Mr. E. Todd Tracy appeared before the Court in response to an order to show cause why he did not violate the provisions of Rule 11(b)(1) and (3) of the Federal Rules of Civil Procedure when he filed a motion to withdraw as counsel for plaintiff on September 18, 1995. Mr. Tracy appeared with counsel and announced ready to proceed. Evidence was presented and post-hearing briefs have been filed. The Court has considered all of the evidence presented at the hearing, as well as the evidence presented on October 5, 1995, at the hearing on Mr. Tracy's motion to withdraw and the briefs, and now enters this Memorandum Opinion and Order containing its Findings of Fact and Conclusions.

### FACTUAL BACKGROUND

This is a product liability case involving injuries allegedly sustained by Plaintiff from the deployment of an airbag safety system during an automobile collision and the resulting exposure to chemicals used in such a system. Plaintiff claims she was exposed to sodium azide, the chemical used to inflate the airbag, and as a result has suffered severe allergic reactions. This case was filed in state court on or about October 15, 1993, and removed to this Court on June 24, 1994. Plaintiff was represented by other attorneys until early March of 1995 when she requested that her attorney of record be permitted to withdraw and Steven C. Laird ("Laird") be substituted as her attorney. Laird was substituted and shortly thereafter Dennis G. Brewer, Sr., also entered an appearance on behalf of Plaintiff. Laird then obtained the assistance of E. Todd Tracy ("Tracy") because of Tracy's experience in representing plaintiffs in suits for damages against automobile manufacturers for alleged defects in their products. Although Tracy began working on the case during March of 1995, he did not officially enter an appearance in this case until July 17, 1995. SCH TRAN. p. 152.[1] At the time Laird and Tracy began representing Plaintiff, the case was subject to a Docket Control Order entered on September 23, 1994, which provided for discovery to be completed by August 1, 1995, and a trial date of November 6, 1995. At the request of both parties, certain dates were extended by the Court on June 21, 1995, but no request was made at that time to extend the trial date.

On September 18, 1995, Tracy filed a motion to withdraw from his representation of Bullard stating:

E. Todd Tracy is presently one attorney of record for Plaintiff, Sandra Bullard, in this case. Due to a conflict, Mr. Tracy must

---

**1.** References to the transcript of the Show Cause Hearing held on January 18th and 23rd will be abbreviated as "SCH TRAN."

regrettably withdraw. Mr. Tracy's withdrawal will not prejudice the rights of Plaintiff as Messrs. Laird and Brewer are extremely capable advocates and jurists.

Despite being less than two months from trial, the Court, relying on Tracy's representations, granted the motion on September 20, 1995. On September 22, 1995, the Court received Plaintiff's Response to E. Todd Tracy's Motion to Withdraw, filed by Laird. In the response, Laird agreed that due to a conflict Tracy could not represent Ms. Bullard's interests. Laird strongly contended, however, that Tracy's withdrawal would significantly prejudice Plaintiff. In view of Plaintiff's response, the Court set aside its order granting Tracy's withdrawal and set a hearing on the motion for October 5, 1995.[2] On September 27th, Laird filed a motion to continue the trial date.

At the October 5th hearing, the Court examined both Tracy's motion to withdraw and Plaintiff's motion for continuance, granted the motion to continue and took the motion to withdraw under advisement. On December 13, 1995, the Court, pursuant to FED. R.CIV.P. 11(c)(1)(B), issued a show cause order, ordering Tracy to appear and show cause why he did not violate Rule 11(b)(1) and (3) by making the following representations to the Court in his motion to withdraw:

1. That the motion to withdraw was not presented to the Court for any improper purpose.

2. The allegation that Mr. Tracy's withdrawal would not prejudice the rights of plaintiff had evidentiary support.

3. The allegation that there was a conflict between Mr. Tracy and the plaintiff which would necessitate his withdrawal as an attorney of record for plaintiff had evidentiary support.

The order was issued because the Court had serious concerns about the conduct of Tracy in filing his motion to withdraw and

the testimony given by Tracy and others at the October 5th hearing, both in open court and *in camera.* The Court was also concerned with the propriety of the actions by Chrysler Corporation and its attorneys in seeking to gain the withdrawal of Tracy from the *Bullard* case. WDH TRAN. pp. 25–28, 34–37, and 41–47; SCH TRAN. pp. 38–39 & 95–99. Tracy and Laird both claim that Chrysler, through its attorneys, conveyed to Tracy that he was a rising star in automobile design litigation and that if he wished to continue in his success at getting favorable treatment for his clients from Chrysler, he should withdraw from representation of Bullard. *Id.* In short, no cases would be settled and Tracy would be required to actually try all his cases with Chrysler.[3]

### STANDARDS AND PROCEDURES UNDER RULE 11

Federal Rule of Civil Procedure 11(b)(1) & (3) state:

> By presenting to the Court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney ... is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> > (1) it is not being presented for any improper purpose ...;
> >
> > (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery....

Under FED.R.CIV.P. 11(c)(1)(B), a court may on its own initiative enter an order describing the specific conduct that appears to violate part (b) of the rule and directing the attorney to show cause why his conduct was not violative. After a party has received

2. References to the transcript of the October 5th hearing will be abbreviated as "WDH TRAN."

3. The Court certainly does not find any fault with requiring a plaintiff to try his case. The action which the Court questions is conditioning the conduct of other cases on the attorney's withdrawal from or conduct in a specific case. The Court, however, does not have a "filing" under Rule 11 from Chrysler for which it could seek to discipline Chrysler and its attorneys' behavior. The Court is hopeful that when the Texas State Bar examines the conduct in this case, it will consider the propriety of the conduct of Chrysler and its attorneys.

notice of a suspected Rule 11 violation and after a reasonable opportunity to be heard, the court may, subject to the restrictions in Rule 11(c)(2) and (d), impose an appropriate sanction if convinced that subsection (b) has been violated.

### A. *Notice and a Reasonable Opportunity to be Heard*

This Court *sua sponte* entered the show cause order on December 13, 1995, ordering Tracy to show cause why his conduct did not violate Rule 11(b)(1) & (3), and describing specifically the conduct thought by the Court to be in violation. The hearing was reset several times due in part to the Court's schedule and in part to Tracy's attempts to abate and stay the proceedings pending trial of the *Bullard* case and pending applications by Tracy for a writ of mandamus to the Fifth Circuit and an application for *certiorari* to the Supreme Court. The show cause hearing was ultimately held on January 18, 1996, and continued on January 23, 1996. The hearing lasted a total of approximately five hours. The Court is satisfied that the requirements of Rule 11(c)(1)(B) have been complied with and that Tracy was provided adequate notice and a reasonable opportunity to be heard as required by Rule 11(c) and the Due Process clause of the United States Constitution. *International Ore & Fertilizer Corp. v. SGS Control Servs., Inc.*, 38 F.3d 1279 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2276, 132 L.Ed.2d 280 (1995); *Pan-Pacific and Low Ball Cable Television Co. v. Pacific Union Co.*, 987 F.2d 594 (9th Cir. 1993).

### B. *Court's Findings as to E. Todd Tracy's Credibility*

Because much of the testimony relied upon by Tracy in responding to the show cause order is his own, the Court will begin by addressing Tracy's credibility. The Court first notes that in his appearances before this Court at both the hearing on his motion to withdraw and especially at the show cause hearing, Tracy's demeanor and manner of answering both the Court's questions and those of other counsel has been evasive, elusive and shifty.[4] Having observed Tracy both in the courtroom and in chambers, the Court finds that his lack of credibility is demonstrated not only by his testimony but by his manner of testifying and the way he appeared physically.

Tracy's testimony is contrary to common sense and the documentary evidence presented at the hearings. For example, Tracy refused to admit that two attorneys could prepare the Bullard case for trial more quickly than one, despite the fact that each attorney was responsible for a separate portion of the case. SCH TRAN. p. 155, ln. 5–p. 157, ln. 17. Despite consistently asserting that his doubts regarding the merits of this case began in August, 1995, and gathered momentum until the filing of his motion to withdraw, no memorandums, letters or notes have been introduced which would support his contention. SCH TRAN. p. 137, ln. 8—p. 139, ln. 25.[5] The Court finds Tracy's testimony regarding discussions with Laird and his legal assistant, Sherry Phillips ("Phillips"), concerning the extent of damages allegedly suffered by Bullard to be the normal process of playing "devil's advocate" and not as Tracy asserts, a true expression of the case's doubtful merit by Tracy. WDH TRAN. pp. 15–18; SCH TRAN. 79–81 & 172–74. Both Laird's and Phillips' testimony support this finding. WDH TRAN. pp. 18–19; SCH TRAN. pp. 25–26, 29–31, 33, 36, 39–41, 47–48 & 60–64. Finally, Tracy initially denied having ever received medical information on Bul-

---

4. The following excerpts are examples of testimony which support the Court's conclusion regarding the manner and appearance of Tracy's testimony. WDH TRAN. p. 26, lns. 13–21; p. 31, lns. 12–19; p. 32, lns. 19–25; p. 35, lns. 4–13; p. 42, lns. 7–14; SCH TRAN. p. 79, ln 23–p. 80, ln. 15; p. 110, lns. 2–5; p. 111, lns. 8–17; p. 115, lns. 17–23; pp. 126–27; pp. 132–35; p. 137, ln. 6–p. 139, ln. 4; p. 154, lns. 10–25; p. 156, ln. 4–p. 157, ln. 17; p. 160–61; p. 169, lns. 15–20; pp. 170–74; pp. 177–79.

5. Tracy admitted that perhaps his entire file had not been transmitted to Laird because some of his notes were in computer memory only and may not have been reduced to printed form. SCH TRAN. 137–39. To date, this Court has received nothing from either Tracy or Laird which would show that the computer records contained any evidence supporting or defeating Tracy's assertions.

lard's damages until after her depositions, but later had to admit that he may have received the information and just never reviewed it. SCH TRAN. p. 68 & pp. 112–16.[6]

The Court further finds Tracy's credibility regarding the needs of his other clients that were allegedly juxtaposed against the need of Ms. Bullard to be incredible. The evidence shows that Tracy had no conflicting trial settings and no demands on his time that would have prevented him from continuing to work on the Bullard case. SCH TRAN. pp. 96, 107 & 174–75. It certainly appears from his testimony that Tracy has forgotten who his clients are. WDH TRAN. p. 35, ln. 25–p. 37, ln. 9. Tracy appears to feel more of an obligation to Chrysler and their desires than he does the true needs of his "clients."[7] Tracy's loyalty to his own clients' needs appear secondary to his desire to maintain a positive relationship with Chrysler so as to ensure his own financial success. SCH TRAN. pp. 127, 151 & 174–181. It was his interests rather than his clients' interests that were of concern to Tracy in ensuring his access to Chrysler's early resolution program.

Tracy has strewn the record in this case with various assertions regarding his reasons for withdrawal, but the Court finds that his primary, if not sole, reason for withdrawal from Bullard's case was his personal economic security. Tracy's Motion to Withdraw was filed approximately one week after Chrysler's comments to him regarding the future handling of his cases with them. SCH TRAN.

p. 95. In his letter to Laird regarding his reasons for withdrawal, Tracy states:

> Upon further discussions with Chrysler, they simply have me by the testicles. **I cannot bite the hand that feeds me so well,** especially since I have so many good Chrysler cases that are being held up due to *Bullard.* Accordingly, I must withdraw from *Bullard.*
>
> This may be cowardly on my part but **with my new practice, Tort Reform looming and the uncertainties of the future,** I have no choice. **This is a purely business/economic decision.**

(emphasis added). Tracy's letter of September 14, 1995, clearly demonstrates Tracy's motive for withdrawing from the *Bullard* case. In his defense, Tracy contends that this letter was meant only as a quick recap of the events immediately prior to his motion to withdraw and was not intended as an exhaustive listing of his reasons to withdraw. SCH TRAN. pp. 128–29. This explanation is insupportable. If what Tracy contends were true, why did he feel compelled to list his new practice, tort reform and an uncertain future, while omitting what he now says were his true motivations: doubt about the merits of the case, problems with experts, concern for his other clients, etc.? The Court finds it compelling that the reasons listed by Tracy in his letter all relate to the future of his personal financial interest.

The Court is mindful of the maxim "*expressio unius est exclusio alterius,*" which

---

**6.** At the October 5th hearing, Tracy initially asserts that his doubts regarding Bullard's injuries stemmed from the fact that her deposition was taking place under environmental conditions which should have caused her to have a physical reaction and she was showing no such signs. WDH TRAN. p. 16. However, on cross-examination during the show cause hearing, Tracy admits that she was indeed showing symptoms of her allergic condition and that the deposition had to be delayed in some portions due to her physical condition. SCH TRAN. pp. 117–18.

**7.** Laird: And you also told me that another demand that [Chrysler] had in addition to you getting off [the *Bullard* case] was that you were never to take any air bag cases against Chrysler; isn't that true?
Tracy: Now it's my under—I've—in talking with [Chrysler's attorneys], I, I knew going into the *Bullard* case that Chrysler takes a very

strong approach on airbag cases. **It's my understanding that Chrysler does not want me working on cases that they consider meritless.** WDH TRAN. p. 35, ln. 22–p. 36, ln. 1.
Laird: Mr. Tracy, all I'm asking you is didn't you tell me that one of the other demands that Chrysler and their lawyers placed on you was that you were not to take any air bag cases in the future because, as you put it, what they told you, they did not want you to start a trend?
Tracy: I don't think Chrysler wants anyone to start a trend.... [T]hey did not want someone bringing forth sodium azide cases, because after all, sodium azide is the propellant that's necessary, and **they did not want me bringing sodium azide cases because they don't consider them valid.**
WDH TRAN. p. 36, lns. 10–24.

translated means the "mention of one thing implies exclusion of another." BLACK'S LAW DICTIONARY 521 (5th ed. 1979). In finding Tracy incredible on this point, the Court is also mindful of the theories that run though our legal system and are expressed in the Federal Rules of Evidence, that our system finds more reliable statements or writings made at or near the time of events rather than those statements made after time has elapsed and memory becomes more faded or manipulated.[8]

The Court concludes from his appearance and demeanor during these proceedings, the lack of corroborating evidence, the generally credible testimony of Laird and Phillips, and the conflicting intent demonstrated by his own writing, Tracy is not a credible witness in any respect except as to his own financial interest entering into his decision to file his motion to withdraw. The Court finds Tracy's motivation in withdrawing from Bullard's representation was a fear that his stream of income from early resolution of his Chrysler cases would stop, therefore endangering his financial condition, and that the remaining excuses put forth by Tracy are merely convenient theories thought up after the Court set his motion to withdraw for hearing.

### C. *Sanctionable Conduct Under Rule 11*

Both as a part of its show cause order and as a part of its order imposing sanctions, a court must specifically describe the conduct thought to be in violation of Rule 11. *F.D.I.C. v. Calhoun*, 34 F.3d 1291, 1297 (5th Cir.1994); FED.R.CIV.P. 11(c)(1)(B); JEROLD S. SOLOVY, ET AL., PRACTICING LAW INSTITUTE, SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 11 p. 25 (1996). In its show cause order, the Court specifically delineated Tracy's conduct which was suspected to be in violation of Rule 11. The Court addresses each of the three areas individually below.

1. *Whether There is Evidentiary Support for Tracy's Representation that his Withdrawal Would Not Prejudice Plaintiff?*

■ Tracy contends his representation in his motion to withdraw that plaintiff would not be prejudiced is supported by the following evidence: (1) Laird is a competent attorney to handle the case; (2) someone from the Brewer firm was going to be involved in some fashion; (3) the case would have to be continued because too much discovery remained undone and the case could not be ready for trial; (4) Tracy's expertise was not serving its purpose and he was a nonentity in the case. SCH TRAN. pp. 157–162. As the Court has previously stated, the Court gives little, if any, credence to Tracy's testimony and has determined that he is not a credible witness. For the reasons expressed below, the Court finds that Tracy's representation that Bullard would suffer no prejudice by his withdrawal is unsupported by any evidence.

Tracy's contention that Laird was a qualified attorney and could handle the development and trial of the case alone simply ignores the division of labor which existed in the case at the time Tracy sought to withdraw. It is uncontroverted that Tracy had, from the time of his initial involvement, assumed sole responsibility for the development, preparation and trial of the liability phase of Bullard's case. SCH TRAN. p. 125. Tracy's motion to withdraw was filed on September 18, 1995, just two weeks prior to the discovery cutoff deadline and less than fifty days prior to trial. It is uncontroverted that much work remained to be done in order to have the case ready for trial, even as the discovery cutoff loomed. SCH TRAN. pp. 154–57. Although Tracy tried to artfully avoid a direct answer to the obvious issue,

---

**8.** M. GRAHAM, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 6752, pp. 566–67 (Interim edition 1992) ("The theory underlying [Rule 803(1)] is that substantial contemporaneity of event and statement negative the likelihood of deliberate or conscious misrepresentation."); MCCORMICK, EVIDENCE § 271 at p. 212 (4th ed. 1992) (stating that statements made at the time of an event are safe from errors due to a defect in the person's memory and are more reliable because there is little time for calculated misstatements); *In re Japanese Electronic Products*, 723 F.2d 238, 303 (3d Cir. 1983), *rev'd on other grounds sub nom*, 471 U.S. 1002, 105 S.Ct. 1863, 85 L.Ed.2d 157 (1985) (noting that the exception for present sense impressions is founded on the notion that contemporaneity of the observation and impression provide some guarantee against misrepresentation and defective memory); FED R.EVID. 612, 803(1), 803(5).

the chance of completing discovery and having the case ready for trial as scheduled is greatly increased with two lawyers working together than it is with just one lawyer. SCH TRAN. p. 157. The Court is convinced that the case could have been tried as scheduled if Tracy had continued to work on the case.

Tracy was the only lawyer working on the liability phase of Bullard's case; it would defy common sense for the Court to find that Tracy could withdraw within two months of trial and then expect that Laird, however competent, could properly complete discovery and prepare a portion of the case which he had only been previously involved with in an advisory capacity. Tracy's withdrawal prejudiced the preparation and trial of Bullard's case, despite Laird's alleged expertise.

As for Tracy's contention that he assumed someone at the Brewer firm would aid in preparing the case for trial, the Court finds this contention to be without merit. Tracy admitted that he had never seen any involvement from the Brewer firm during his time on the case. SCH TRAN. p. 158. Mr. Brewer stated at the October 5th hearing that he was not physically able to assist in the case and that in his professional opinion, Laird would need to associate co-counsel to complete discovery and try the case. WDH TRAN. p. 10, ln. 23–p. 11, ln. 20. There is no evidence that anyone from the Brewer firm had ever done any work to prepare the case for trial. The Court finds that Tracy's assumption was unreasonable. Had someone from the Brewer firm been expected to assist in the trial, the late date of Tracy's withdrawal would still have worked hardship and prejudice on Bullard's case due to the time necessary for a new attorney to become familiar enough with the case to be of any assistance.

Tracy next contends the case could not have been properly prepared for trial by the November 6th trial date regardless of whether he remained in the case and that the Court would have had to grant a continuance. SCH TRAN. pp. 160–61. The Court finds Tracy's statement presumptive, arrogant and self-serving. As Tracy admitted, the Court could have put the parties to trial on the scheduled trial date. There was nothing to support an inference that the Court would continue the case. As Tracy admitted, *Bullard* is an "old case" and should be tried sooner rather than later. SCH TRAN. p. 154. Furthermore, as Laird and Bullard testified, the Plaintiff is ready for this matter to be tried. WDH TRAN. pp. 10 & 19–20. Despite being within fourteen days of the discovery cutoff date Tracy now claims he would be unable to meet, no motion for extension of deadlines or for a continuance was filed with this Court until after Tracy's motion to withdraw was filed. In fact, had the Court chosen to put the parties to trial on the date set, a significant, if not catastrophic, prejudice to Plaintiff would have occurred from Tracy's withdrawal. Instead, the Court chose not to punish the client for her attorney's conduct and did continue the trial. Tracy's assumption that the case would be continued offers no evidentiary support for his representation that Bullard would not be prejudiced by his withdrawal.

Tracy's final argument is that his expertise was not being utilized in the case and therefore his withdrawal would not have a prejudicial effect on Plaintiff's case. SCH TRAN. pp. 73–76 & 162. The evidence shows that at least initially, Tracy was hired into the case for his expertise in automobile design litigation. *Id.* at pp. 68–69. The evidence also shows that Tracy's normal pool of experts were of little use in the preparation of the Plaintiff's case. *Id.* at p. 72. Finally, Tracy contends, and the evidence shows, that it was Laird who found Plaintiff's liability expert and not he. *Id.* at p. 73.

While it may be true that Tracy's experts and information were not of the use he and Laird had initially hoped, there is no evidence that Bullard and Laird were not continuing to rely on Tracy's experience and his commitment to represent Bullard. The evidence is to the contrary. Just because an attorney's special skills in a particular specialty are not being utilized to their potential, an attorney is not relieved of his obligation to represent his client to the best of his ability. That responsibility rests with all members of the bar. SUPREME COURT OF TEXAS, STATE BAR RULES art. X, § 9 (Texas Disciplinary Rules of Professional Conduct) Preamble: A

Lawyer's Responsibility (1995) [hereinafter TEX.DISCIPLINARY RULES OF PROF.CONDUCT] (located in the pocket part for Volume 3 of the Texas Government Code in title 2, subtitle G app., following § 83.006 of the Government Code); Art. II, THE TEXAS LAWYER'S CREED (1989). In this case, Tracy was being fully utilized in that he was solely responsible for preparing the liability phase of the trial. The Court finds Tracy's experience in automobile litigation and his familiarity with Chrysler's products and personnel were of some benefit to Bullard's case and the fact his contacts and expertise were not being utilized as initially intended does not lend evidentiary support to his representation that there would be no prejudice to the Plaintiff from his withdrawal. As the attorney responsible for the liability phase, Tracy was being utilized in a major fashion and his withdrawal would, and did, leave the Plaintiff's case without a fully prepared liability phase.

In conclusion, the Court finds Tracy has failed to produce any credible evidence that supports his representation to the Court that Bullard would not be prejudiced by his withdrawal. Tracy has violated FED.R.CIV.P. 11(b)(3) and should be sanctioned under Rule 11(c).

2. *Whether There is Evidentiary Support for Tracy's Allegation That There was a Conflict Between Tracy and Plaintiff?*

■ As support for his representation of a conflict between him and Bullard, Tracy relies on TEX.DISCIPLINARY RULES OF PROF.CONDUCT, Rules 1.06, 1.15(b)(4) & (b)7, & 3.01 and claims these rules required his withdrawal. Tracy testified that he no longer had a good-faith belief that Bullard's case was meritorious and because of Chrysler's actions, its continued pursuit placed his interests and the interests of his other clients at odds with Bullard's interests.

As for Tracy's lack of faith in the merits of Bullard's claim, the Court has previously addressed this issue and found that other than the normal evaluative process that occurs between lawyers working on a case, Tracy never communicated a sincere belief of doubt as to the ultimate merit of Bullard's case.

Certainly the evidence shows that both Tracy's and Laird's enthusiasm for the case ebbed and flowed and that there were some novel and somewhat thorny evidentiary issues which were going to have to be faced at trial. *See, e.g.,* SCH TRAN. pp. 25–26, 81, 94–95, 112–13 & p. 120, lns. 16–22. However, the Court is not persuaded that Tracy ever believed that the case was frivolous or meritless. Tracy presents no evidence to the contrary other than his own testimony, which the Court finds incredible. He may have had a sincere belief that Plaintiff's damages were not as great as he thought in the beginning, but the Court is convinced that his claim that Plaintiff's case was frivolous and meritless was contrived as an excuse to justify his withdrawal. The Court finds it significant that Tracy never sought out Bullard and questioned her personally in an attempt to resolve his doubts about her damages and description of the accident or to inform her of his desire to withdraw. WDH TRAN. p. 18, lns. 17–22 & p. 30, lns. 19–21. It is also significant that Tracy continued to act as an attorney for Bullard up until he filed his motion. At about the same time he filed the motion, he signed a protective order as Bullard's attorney without consulting Laird. Tracy also admitted that neither Bullard nor Laird requested that he take any action he considered violative of the Rules of Conduct. SCH TRAN. pp. 163–65. There is no evidence to support a finding of a conflict between Bullard and Tracy under TEX.DISCIPLINARY RULES OF PROF.CONDUCT, Rules 1.15(b)(4) & (b)7 or 3.01 which would have required his withdrawal.

In the opinion of the Court, the tactics employed by Chrysler in this case were, to say the least, highly unusual. The Court will not comment further on these tactics, but Chrysler's conduct placed Tracy in a position where his continuing as counsel to Bullard would result in his loss of favor with Chrysler. He would no longer be able to take part in the early resolution of his other cases with Chrysler. SCH TRAN. p. 95. This inability would have deprived Tracy of the ability to get paid on his cases without expending the normal amount of work that would be necessary for settlement or trial of these cases

and, therefore, cut into his profits. Tracy's own financial interest was placed at odds with the need of Bullard to have his skills in preparing her case and his loyalty to her as his client.

Texas Rule of Disciplinary Procedure 1.06 requires an attorney to withdraw or gain a waiver by his client if at any time during the representation of the client, the representation becomes "adversely limited ... by the lawyer's or law firm's own interest." TEX.DISCIPLINARY RULES OF PROF.CONDUCT, Rule 1.06(b)(2). The comment to this Rule states:

> Loyalty to a client is impaired not only by the representation of opposing parties in situations within paragraphs (a) and (b)(1) but also in any situation when a lawyer may not be able to consider, recommend or carry out an appropriate course of action for one client because of the lawyer's own interests or responsibilities to others. The conflict in effect forecloses alternatives that would otherwise be available to the client.
>
> *  *  *  *  *  *
>
> The critical questions are the likelihood that a conflict exists or will eventuate and, if it does, whether it will materially and adversely affect the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client. It is for the client to decide whether the client wishes to accommodate the other interest involved.
>
> *  *  *  *  *  *
>
> The lawyer's own interests should not be permitted to have adverse effect on representation of a client, even where paragraph (b)(2) is not violated.

The Court does not believe that Rule 1.06(b)(2) was intended to encompass a conflict arising from a lawyer's own financial interest in collecting fees from other cases and his interest in maintaining a good relationship with the opposing party. The wording of the rule, however, does not exclude such a conflict. The Court is reluctant to

conclude that such interests are within the class of interests that Rule 1.06 was intended to address, however, the Court has been unable to find authority to the contrary.[9] This interpretation of Rule 1.06 allows any defense counsel having multiple cases with a plaintiff's lawyer to create conflicts at will that would serve to remove the plaintiff's attorney from cases of the defense's choosing and diminishes the fundamental duty of loyalty owed by an attorney to his client. Rule 1.06 is vague and needs to be clarified, but any modification of the rule will have to be determined by the State Bar of Texas.

Having concluded that Tracy's own financial interest was at odds with that of Bullard's interest in vigorously pursuing her case, the Court finds that it was not unreasonable for Tracy to conclude that a conflict within the scope of Rule 1.06 existed. It was not unreasonable for Tracy to believe that such conflict was of a severity that it foreclosed alternatives otherwise available to Bullard if Tracy continued in her representation. Moreover, Bullard has indicated that she would not have been willing to waive such a conflict. WDH TRAN. pp. 9–10. Accordingly, the Court concludes that there was evidentiary support for Tracy's representation that a conflict existed and it was not unreasonable for Tracy to believe that he should withdraw under TEX.DISCIPLINARY RULES OF PROF.CONDUCT, Rule 1.06(b). Therefore, the Court finds Tracy has successfully shown cause why he should not be sanctioned for such representation under FED.R.CIV.P. 11.

3. *Whether Tracy's Motion to Withdraw was filed for an Improper Purpose?*

██ In response to the show cause order on this point, Tracy, both in his testimony and his closing brief, contends that his motion was proper on three grounds: (1) Tracy no longer believed Bullard's claims and did not feel it was appropriate to continue pursuing the case; (2) Laird was extremely qualified to handle the case and Tracy's expertise was not meaningfully utilized; and (3) Tra-

---

**9.** After exhaustive research, the Court has been unable to find any case, ethics opinion, ethics advisory opinion, or article dealing with the scope of interests covered under Rule 1.06(b)(2).

cy's alleged conflicting obligations to other clients. The Court finds each of Tracy's arguments unpersuasive, unsupported and incredible except with respect to Laird's ability.

In order to find that a filing is undertaken for an improper purpose a court must focus on the objectively ascertainable circumstances and not on the subjective intent of the filing party. *Sheets v. Yamaha Motors Corp., U.S.A.,* 891 F.2d 533, 538 (5th Cir.1990). Impropriety of a filing is judged from the signer's intent, objectively tested, rather than consequences of the signer's act subjectively viewed by his opponent. *Calhoun,* 34 F.3d at 1296; *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 832 (9th Cir.1986). While filings which are shown to be well grounded in fact and law are not immunized from rule 11 sanctions on the basis of being filed for an improper purpose, such filings are sanctionable only under unusual circumstances. *Sheets,* 891 F.2d at 538. If the central and sincere purpose of a filing is not to vindicate rights in court, its purpose must be improper. *In re Kunstler,* 914 F.2d 505, 518 (4th Cir.1990), *cert. denied,* 499 U.S. 969, 111 S.Ct. 1607, 113 L.Ed.2d 669 (1991).

Since the Court has previously found some evidentiary support for Tracy's assertion that a conflict existed between him and Bullard, the Court cannot find that Tracy's motion was filed for an improper purpose. TEX.DISCIPLINARY RULES OF PROF.CONDUCT, Rule 1.06(b)(2).

### D. *Sanctions Under Rule 11*

Because the Court has found Tracy violated Rule 11(b)(3) by having no evidentiary support for his representation that Plaintiff would not be prejudiced by his withdrawal, the Court must now consider what sanctions should be imposed. FED.R.CIV.P. 11(c). In considering the sanction to be imposed, the Court has available any of the following: (1) issuance of an admonition, reprimand or censure; (2) requiring the attorney participate in seminars or educational programs; (3) imposition of a fine payable to the Court; (4) referral of the matter to disciplinary authorities; and (5) payment of fees to the opposing side. FED.R.CIV.P. 11 *Advisory Committee's Note,* 146 F.R.D. 583, 587–88 (1993). In considering what form of sanction to impose, the Court may consider: (1) whether the conduct was willful or negligent; (2) whether the activity was isolated or part of a pattern of activity; (3) whether the conduct affected only a single event within the case or the entire litigation; (4) any previous similar conduct by the attorney; (5) whether the conduct was intended to cause injury; (6) the effect of the conduct on the litigation in terms of time and expense; (7) whether the responsible party was trained in the law; and (8) what sanction, given the financial resources of the responsible person, is needed to deter similar activity by other litigants. *Id.* In deciding upon a sanction to impose, a court must impose the least sanction available to carry out the purposes of Rule 11. *Id.*

#### 1. *Permissive Considerations*

The filing of the motion to withdraw and the representation made by Tracy in that motion were willfully done. However, the Court finds that this conduct was only an isolated event rather than being part of a continuing course of conduct, and the Court has not been made aware of any previous similar conduct by Tracy. Moreover, the Court cannot conclude that Tracy intended for his conduct to be injurious to anyone. The Court finds, however, that because of Tracy's conduct, the trial of this case had to be continued from its November, 1995, trial date and as yet the Court has been unable to reschedule it. Tracy's conduct has caused this Court and the various attorneys involved in this litigation to expend a significant amount of time in preparation for the withdrawal and show cause hearings and significantly more time conducting the actual hearings. The Court further finds that Tracy's conduct increased the expense of this litigation for all parties and for the Court. Finally, the Court concludes that Tracy has sufficient resources to hire very reputable counsel for the handling of this matter and has apparently spent a considerable sum in trying to postpone the hearing of this matter in the form of an application for writ of mandamus to the Fifth Circuit and an application for

*certiorari* to the Supreme Court, as well as various motions filed with this Court. By all appearances, Tracy has a thriving and profitable law practice. The Court concludes that Tracy's financial position is above-average for an attorney of his level of experience.

### 2. Sanctions Imposed

Having considered the aforementioned factors, the Court finds the following to be appropriate sanctions for Tracy's conduct. Due to the extraordinary amount of judicial resources that Tracy's conduct has consumed, both in preparation for and conducting of hearings and preparing this order, Tracy should pay to the Court as a fine, Two Thousand Five Hundred Dollars ($2,500). The Court further finds that to accomplish Rule 11's purpose of discouraging future misconduct by other litigants, Tracy should be publicly reprimanded. The Court further finds that because of the importance of candor from a lawyer to the court and Rule 11's purpose of seeking to prevent future breaches of the Federal Rules, Tracy should be required to complete ten hours of continuing legal education in the area of ethics. The ten hours imposed by this Court shall be in addition to all CLE requirements imposed upon Tracy by the Texas State Bar. Tracy shall have until May 23, 1997, to complete these additional hours and shall present this Court with proof of completion on or before that same date. Finally, the Court finds that this matter should be referred to the Texas State Bar Association's Attorney Disciplinary Committee for further investigation.

### 3. Mandatory Consideration

▆▆▆ As previously stated, the Court must consider why the sanctions selected are the least severe possible to accomplish the purposes of Rule 11. Generally speaking, the purpose of Rule 11 is to deter and punish improper conduct. *Navarro–Ayala v. Nunez,* 968 F.2d 1421 (1st Cir.1992); *Leno v. Summit Constr. Co.,* 892 F.2d 788 (9th Cir. 1989); *Corporate Printing Co., Inc. v. New York Typographical Union No. 6,* 886 F.Supp. 340 (S.D.N.Y.1995). The Supreme Court has stated that Rule 11's central purpose is to deter baseless filings and streamline the administration and procedure of the federal courts. *Cooter & Gell v. Hartmarx Corp,* 496 U.S. 384, 393, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990).

The Court finds that placing even the most minimal dollar value on the Court's time, the fine imposed is proper to punish Tracy for the judicial resources his conduct has caused to be expended. The Court further finds the public reprimand is necessary to satisfy Rule 11's purpose in deterring future violations by Tracy and others. The education requirement imposed is meant to satisfy Rule 11's purpose of deterring baseless filings by better educating Tracy on the ethical considerations in withdrawing from representations and in ensuring his evidence supports his representations. Finally, the Court finds the Texas State Bar is best equipped to deal with Tracy's conduct as it relates to the other litigants and to the State Bar Rules and Texas Lawyer's Creed and that this is necessary to further Rule 11's purpose of deterrence.

The Court considered a larger fine as well as compensation of the remaining Plaintiff's counsel for time expended in relation to Tracy's motion to withdraw and completion of the preparation of the liability phase. The Court chose not to impose these as it decided that the fine was sufficient to punish Tracy without being unfairly burdensome and did provide some compensation to the judicial system for use of its resources. The Court finds that given Rule 11's caution on awarding fees, this was not a case fitting the criteria for fee shifting. *Advisory Committee's Note,* 146 F.R.D. at 588 (stating that fee awards should normally be limited to violations of Rule 11(b)(1)).

### CONCLUSION

E. Todd Tracy has violated Fᴇᴅ.R.Cɪᴠ.P. 11(b)(3) and should be sanctioned under Rule 11(c). He has also breached his duty to deal in a forthright manner with the Court, his client and his co-counsel. Tracy should pay a fine of $2,500 to the Court, be subject to a public reprimand, complete ten hours of continuing legal education in the area of ethics, and this matter should be referred to the Texas State Bar Association for further pro-

ceedings. The fine is due and payable within ten (10) days from the date of the signing of this Order. Tracy's motion to withdraw should be granted.

IT IS SO ORDERED.