# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

## No. 92-7002
_____


CHRISSY F., By Her Next Friend and Guardian
Ad Litem Donna Medley,

Plaintiff-Appellee
Cross-Appellant,

versus

MS DEPT. OF PUBLIC WELFARE, ET AL.,

Defendants,

MS DEPT. OF PUBLIC WELFARE, THOMAS H. BRITTAIN, JR.,
Individually and as Commissioner of the
MS Dept. of Public Welfare,
MARION COUNTY WELFARE DEPARTMENT,
HANCOCK COUNTY WELFARE DEPARTMENT, SHARON WHITT,
Individually and as Supervisor of Marion County
Welfare Department, ANGELA LACY, Individually as
Caseworker for Marion County Welfare Department,
PHILLIP BROADHEAD and FRED COOPER,

Defendants-Cross-Appellees,


SEBE DALE, JR., Individually and as Chancellor
for the Tenth Chancery Court District of MS and
GARLAND UPTON, Individually and in his capacity as
Referee of the Marion County Youth Court,

Defendants-Appellants
Cross-Appellees.

_____

Appeals from the United States District Court
for the Southern District of Mississippi
_____

July 7, 1993

Before DAVIS and JONES, Circuit Judges, and PARKER[1], District Judge.

EDITH H. JONES, Circuit Judge:

This case comes to us on appeal for the third time. It involves allegations that defendants violated a minor's constitutional rights in Youth Court and Chancery Court proceedings in Mississippi. After trial, the district court refused to grant relief on claims made against all but two of the defendants. These two defendants, a Mississippi chancery court judge and a youth court referee, were found to have violated the minor's constitutional right of access to the courts. The district court also found that the referee had violated the minor's procedural due process rights. Both defendants appeal the decision of the district court. The guardian ad litem cross-appeals, seeking to resurrect her claims against all of the other defendants. We hold that the district court did not have jurisdiction to grant injunctive relief against the judge and referee. In all other respects, we affirm.

**I**

For the sake of brevity we refer the reader to the carefully detailed statement of facts in the district court's memorandum opinion and order. <u>Chrissy F. By Medley v. Mississippi Department of Public Welfare, et al.</u>, 780 F.Supp. 1104 (S.D.Miss. 1991). What follows is a brief summary of the most recent or relevant events in the long and tortured history of this case.

---

[1] Chief Judge of the Eastern District of Texas, sitting by designation.

On July 8, 1988, Donna Medley, a California resident, filed a complaint in the United States District Court for the Southern District of Mississippi on behalf of Chrissy F., a Mississippi minor then six years old, alleging various violations of a vast array of constitutional and statutory rights and privileges. The complaint requested that declaratory judgment be granted against defendants Mississippi Department of Public Welfare (MDPW); Thomas H. Brittain, Commissioner of MDPW; Mississippi Attorney General Mike Moore; Sebe Dale, Jr., Chancellor of the Tenth Chancery Court District of Mississippi; Richard Douglas, District Attorney for the Fifteenth Circuit Court District; Sharon Whitt, Supervisor of the Marion County Welfare Department; Jeanette Werbley, Supervisor of the Hancock County Welfare Department; Angela Lacey, a caseworker with the Marion County Welfare Department (state defendants); Dr. Franklin D. Jones; Dr. S. Kimball Love; Timothy Charles Foxworth, father of Chrissy F.; and Does 1-25; alleging that these defendants had violated the minor's right not to be deprived of state and federally created benefits of life, liberty, and the pursuit of happiness, rights to freedom from harm and violation of the Fourteenth Amendment, 42 U.S.C. § 5103, et. seq., and an order issued by the Juvenile Court of the San Francisco Superior Court of California.

The complaint initially sought to have the United States District Court set aside the custody rulings of Chancellor Dale, a Mississippi Chancery Court judge, and award custody of Chrissy F. to the San Francisco Department of Social Services or to place her

3

in an alleged neutral and stable setting, not with any maternal or paternal relatives, in cooperation with the National Children's Advocacy Center in Huntsville, Alabama. Additionally, the complaint sought an order requiring all defendants to pay for a comprehensive physical, psychological, and psychiatric evaluation of Chrissy F., and to force them to file a petition in the Youth Court of Hancock County, Mississippi, on behalf of the minor, to immediately investigate and pursue reports of sexual and psychological abuse.

Additionally, the complaint sought compensatory and punitive damages against all of the defendants except Youth Court Referee Upton and Chancellor Dale. The defendants moved to dismiss the complaints pursuant to Fed. R. Civ. Proc. § 12(b)(1), or in the alternative, moved to dismiss pursuant to Fed. R. Civ. Proc. § 12(b)(6). On August 26, 1988, the district court granted the § 12(b)(1) motion, finding that the complaint was "inextricably intertwined" with the state court judgment.

We reversed and remanded the case to the district court, Chrissy F. v. Mississippi Department of Public Welfare, 883 F.2d 25 (5th Cir. 1989) (Chrissy I), directing the district court to hold a hearing to determine if Donna Medley should be appointed as guardian ad litem for Chrissy F. in these proceedings. In that opinion, we did not address any of the jurisdictional issues raised in the appeal such as the collateral attack on state court orders, domestic relations exception, or immunity questions before the court.

4

On remand, the district court appointed Donna Medley as guardian ad litem for Chrissy F. The court subsequently dismissed as defendants, by agreement with the plaintiff, Dr. Franklin Jones, Dr. Kimball Love, and Attorney General Mike Moore. The remaining parties conducted discovery and depositions. The defendants filed motions to dismiss or for summary judgment on March 30, 1990, on the grounds of Eleventh Amendment immunity, qualified immunity, absolute judicial immunity, and absolute prosecutorial immunity.

The district court denied the motions to dismiss except as to the Eleventh Amendment immunity from damages of the state defendants in their official capacities and as to absolute immunity and damages of the guardians ad litem, Broadhead and Cooper. The state defendants and District Attorney Douglas immediately appealed the denial of their immunity claims to this court. We affirmed the district court's opinion in Chrissy F. v. Mississippi Department of Public Welfare, et al., 925 F.2d 844 (5th Cir. 1991) (Chrissy II). Our holding was, however, strictly limited to issues of absolute and qualified immunity from personal judgments for money damages, over which this court has interlocutory appellate jurisdiction. The immunity questions were decided only as to those defendants against whom Chrissy sought monetary damages--District Attorney Douglass, and Mississippi social workers Brittain, Whitt, Lacy and Werbley. Chrissy II did not consider the general defense of failure to state a claim or the availability of declaratory and injunctive relief. 925 F.2d at 849, 851.

5

The district court held a nonjury trial on the merits in June, 1991. Later, the court issued a lengthy memorandum opinion and order, dismissing all remaining claims against the defendants except Chancellor Dale and Youth Court Referee Upton. The district court found that Dale and Upton had violated Chrissy's right of access to courts. The district court also found that Upton had violated Chrissy's procedural due process rights. The district court enjoined Upton, in his capacity as Youth Court Referee of Marion County, Mississippi, to conduct a new youth court hearing to reexamine the allegation of Chrissy's sexual abuse. This appeal followed.

## II

Appellants Dale and Upton argue that the district court had no subject matter jurisdiction to review collateral attacks on state court judgments. They contend that the relief sought by Chrissy F. in federal district court was essentially a reversal of the Chancery Court custody ruling. They also argue that the district court's order enjoining Upton to conduct a new hearing actually does reverse the final and definitive orders of the Chancery Court and Youth Court. They argue that Chrissy's only recourse was to seek review in the Mississippi state court system and then ultimately in the United States Supreme Court.

Chrissy F. defends the district court's ruling by pointing to the Fifth Circuit's previous reversal of the district court's dismissal for lack of subject matter jurisdiction. The appellees argue that the Fifth Circuit implicitly found subject

6

matter jurisdiction by remanding to the district court for the appointment of a guardian ad litem. The appellees further assert that Chrissy F. did not seek and has not obtained a reversal of the state court custody decree in federal court. Rather, they argue that the district court's order enjoining Upton to hold another abuse adjudication is designed to insure that the proceeding conforms to her statutory and constitutional rights. Finally, they contend that Chrissy F. was not a party in the Chancery Court proceeding before Judge Dale, which originated as a divorce action between her parents, and therefore could not seek review in the state appellate courts.

The Supreme Court has stated that a "United States district court has no authority to review final judgments of a state court in judicial proceedings." District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482, 103 S. Ct. 1303 (1983). Indeed, the Supreme Court has stated that "a petitioner's failure to raise his constitutional claims in state court does not mean that a United States District Court should have jurisdiction over the claims." Feldman, 460 U.S. at 482 n.16. Such failure may lead the party to "forfeit his right to obtain review of the state court decision in any federal court." Id. This is not a case in which a party had sued in federal court to "mount a general challenge to the constitutionality" of a statute or rule. Id. at 483. Medley does not explain how the relief she sought and obtained in federal court against Dale and Upton differs from that available if direct appeal had been taken in state court. She argues that the slapdash

7

state process itself, which violated state law in several respects, also amounted to a deprivation of Chrissy F.'s right of access to courts and procedural due process rights guaranteed under the United States Constitution. The Mississippi courts are well equipped, however, to review violations of federal constitutional law, as Medley's counsel conceded at oral argument. Chrissy's guardians at litem were present at the Chancery Court hearing on December 31, 1987, which led to Chancellor Dale's modified affirmance of his order awarding custody of Chrissy to her father, yet Medley offers no reason why neither she nor the guardians ad litem were unable to appeal the Chancery Court or December, 1987 Youth Court orders in the state appellate courts.[2]

The record in this case reveals that the plaintiff's suit is "patently an attempt to collaterally attack the validity of [the state court judgment]." Almon v. Sandlin, 603 F.2d 503, 506 (5th Cir. 1979). As the district court originally believed, this suit, insofar as it seeks a new adjudication of Chrissy's alleged abuse and custody, is "inextricably intertwined" with the state court's rulings against the appellants. Feldman, 460 U.S. at 483 n.16.

Our decision in this case is guided by Reed v. Terrell, 759 F.2d 472 (5th Cir. 1985). In Reed, the plaintiffs filed suit

---

[2] Chrissy F's maternal grandmother did attempt to continue the appeal of the August, 1987 Chancery Court custody order following the death of Chrissy's mother, but her attempt was denied. The Chancery Court "held in abeyance" its final custody order, however, after Chrissy F. was brought back from San Francisco, and it modified that order on December 31 to grant day-to-day responsibility for Chrissy F. to her paternal grandmother while her father worked weeklong shifts in the offshore oil industry.

under various statutory provisions, including 42 U.S.C. §§ 1983, 1985, and 1986. They asserted that their constitutional rights of due process and equal protection were violated by an award of attorney's fees to the defendants. In addition to two attorneys, the plaintiffs named as defendants a judge, a district clerk, and the State Bar of Texas. As here, they sought declaratory relief, injunctive relief, and damages. This court remarked that "the 'essential relief' sought by the plaintiffs is reversal of the state court award of attorneys fees against them." Id. at 473. Citing Feldman, Reed concluded that the suit was "inextricably intertwined" with the state court's award against the plaintiffs, and it affirmed the district court's dismissal of the suit for want of jurisdiction.

The appellees attempt to distinguish Reed by noting that the parties to the state suit in that case were also the parties to the federal suit, and thus, they would have been able to seek review in state court. However, as we have noted, Medley has not indicated why she or any other interested persons could not pursue an appeal in state courts. The guardians ad litem, for instance, had a duty to act in Chrissy F's best interest. Medley challenges their effectiveness and judgment, but they were knowledgeable attorneys, and it is on their shoulders that the duty to object to the informality of the Youth Court hearing rested. The district court erred in attributing to Upton and Dale, as judicial officers, the constitutional duty to protect Chrissy F's procedural rights

9

beyond appointment of a guardian ad litem.[3]  To impose such a duty

on a judicial officer in the performance of judicial duties is to

circumvent the state court appellate procedures and potentially to

cast the judge in a role uncomfortably close to that of advocate.

It is enough that appellate procedures exist and that a remedy may

be had against the guardians ad litem.

Finally, the appellees' assertion that we decided in

favor of jurisdiction to award this injunctive relief in Chrissy I

is unavailing.  The court did not address any jurisdictional issues

in that opinion.  Instead, we remanded to the district court for a

determination of whether Medley was the appropriate person to

represent Chrissy under Mississippi law in accordance with Fed. R.

Civ. Proc. § 17(b).  Resolution of guardian ad litem status was

regarded as a predicate to any further consideration of the case,

including jurisdictional questions.  Thus, the court did not decide

jurisdiction either explicitly or by necessary implication.[4]  We

have done so today.

**III.**

---

[3]     Specifically, the district court held that Dale
violated Chrissy's right of access to the courts by conducting a
"hearing" on December 18, 1987, over which he "lacked
jurisdiction", by not having the hearing transcribed, and by not
securing attendance of the guardians ad litem at the hearing.
The district court held that Upton violated Chrissy's right of
access to Youth Court and her procedural due process rights by
the informality of his December 30, 1987 proceeding and by
failing to insure proper representation of Chrissy F. by the
guardians ad litem.  All of these deficiencies raised issues that
were potentially correctable within the Mississippi judicial
system.

[4]     Similarly, as above noted, we did not decide
jurisdiction in Chrissy II.

10

On cross-appeal, Medley challenges the district court's failure to award relief under § 1983 for constitutional claims and the alleged violation of the federal Child Abuse Prevention and Treatment Act, 42 U.S.C. § 5101 <u>et seq</u>. The targets of these claims are welfare department officials Brittain, Whitt and Lacy and the guardians ad litem Broadhead and Cooper. We agree with and adopt the district court's analysis of these claims. Its factual findings were not clearly erroneous, and its legal analysis was correct and appropriate.

Accordingly, the district court erred in exercising jurisdiction to grant injunctive relief against Upton and Dale in this case. Its decision in this respect is **REVERSED** and **RENDERED** in their favor. In all other respects, the decision of the district court is **AFFIRMED**.

**REVERSED** and **RENDERED** in Part, **AFFIRMED** in Part.