**Jakes JORDAAN, Plaintiff,**

v.

**Sydney HALL and the Honorable Marylea Lewis, Defendants.**

**No. CIV.A. 3:03–CV–0706–G.**

United States District Court,
N.D. Texas,
Dallas Division.

Aug. 7, 2003.

---

Patricia Riley Jordaan, Jordaan & Riley, Dallas, TX, for Plaintiff.

Katherine A. Kinser, Pezzulli Kinser, Michael F. Pezzulli, Pezzulli Kinser, Dallas, TX, James Carlton Todd, Attorney General of Texas, Austin, TX, for Defendants.

### MEMORANDUM ORDER

FISH, Chief Judge.

On June 11, 2003, Patricia Riley Jordaan, Esq. ("Riley"), counsel for the plaintiff Jakes Jordaan ("Jordaan"), appeared before this court to show cause why sanctions should not be imposed upon her for violation of Rule 11, FED. R. CIV. P. At the close of that hearing, the court held that Riley and her law firm had violated Rule 11 and sanctions were therefore imposed. The purpose of this memorandum order is to elaborate on the basis of those sanctions and to reinforce the proper boundaries of Rule 11.

### I. BACKGROUND

On August 11, 1999, Jordaan and the defendant Sydney Ann Hall ("Hall") ended a two-year divorce battle[1] when they signed an *agreed* final decree of divorce (the "final decree" or "decree") and submitted it for entry by the 330th Judicial District Court of Dallas County, Texas (the "330th District Court" or the "state court"). *See* Defendant Sydney Hall's Reply to Plaintiff's Response to the Court's Order to Show Cause ("Hall's Show Cause Reply") at 4–5; Plaintiff's Original Complaint, Request for Declaratory Judgment & Application for Injunctive Relief ("Original Complaint") ¶¶ 21–22 and n. 4. The contentious nature of this divorce is exemplified by the final decree's algorithmic child custody provisions and highly particularized asset distribution provisions, which detail everything from trust funds, heirlooms, and jewelry to trash cans, bath mats, and "various towels." *See* Appendix to Defendant Sydney Hall's Reply to Plaintiff's Response to the Court's Order to Show Cause ("Hall's Show Cause Appendix") at 1–39. Of particular significance here, however, are the provision prohibiting the making of "disparaging remarks about the other parent" in the presence of the parties' children and the provision restricting the dissemination of "audio taped voice mail messages," or transcripts of such recordings, which contain statements made by Hall while suffering from clinical depression.[2] *See* Hall's Show Cause Reply at 4–5.

In exchange for acceptance of the final decree's terms, Hall agreed, among other things, to pay Jordaan 862,000 dollars

---

1. Jordaan initially petitioned for divorce on October 20, 1997. *See* Appendix to Motion to Dismiss and Brief in Support Thereof ("Hall's Dismissal Appendix") at 54.

2. Those provisions, *in haec verba*, are as follows:

*No disparaging remarks regarding either parent.* The parties are prohibited from making disparaging remarks about the other parent and from discussing any evidence and/or claims of either parent with the children or with anyone else when the children are present.

\* \* \* \* \* \*

*Pending Actions and Evidence....* JAKES JORDAAN and SYDNEY ANN JOR-

DAAN specifically agree and IT IS THEREFORE ORDERED AND DECREED that neither of them shall play, nor permit anyone else to play, the audio taped voice mail messages at issue in this matter or disclose, nor permit anyone else to disclose, the contents of said tapes, to any other person, including the parties' children, *at any time in the future,* without first obtaining the prior written consent of the other party or an order from a Court of competent jurisdiction.

Hall's Show Cause Appendix at 12, 24 (emphasis in original).

within twenty-four hours following the court's entry of the decree and Jordaan's signing of certain enumerated documents. *See* Hall's Show Cause Reply at 4–5; Hall's Show Cause Appendix at 29, 32. Jordaan did not object to the constitutionality of the final decree nor did he choose to appeal that decree. *See* Hall's Show Cause Reply at 5; Motion to Dismiss and Brief in Support Thereof ("Hall's Motion") ¶ 4.

Unfortunately, the final decree proved to be not an end to the war but only a temporary cessation of hostilities. On January 22, 2002, Hall filed an emergency motion with the state court to enforce compliance with the final decree, alleging that Jordaan, in the course of a mediation,[3] had disclosed the contents of an audio tape to Donna Harris, the mediator, in "clear violation of the [state court's] order contained on page [twenty-four] of the [agreed final divorce decree]." Hall's Dismissal Appendix at 47–48; *see also* Hall's Motion ¶ 5. Hall further alleged that Jordaan "has played or permitted to be played the audio tapes in his possession at issue in this case by . . . Kim Castleberry and Patricia Riley Jordaan," actions which "constitute separate and independent violations of the [final decree]." Hall's Dismissal Appendix at 48. Hall requested, in addition to appropriate sanctions, that the court order Jordaan to post a twenty-five thousand dollar bond, to relinquish all original audio tapes and copies made therefrom, and to pay her reasonable attorney fees. *Id.* at 48–49.

Jordaan responded the next day by filing a motion to recuse Judge Marylea Lewis ("Judge Lewis"), the state judge with continuing jurisdiction over his divorce case. *See* Hall's Show Cause Appendix at 40–48. Jordaan's recusal motion alleged that Judge Lewis had displayed "clear favoritism" toward Hall and her counsel, Katherine Kinser ("Kinser"), as evidenced by "the number and nature of arbitrary and egregious rulings made by Judge Lewis," an enigmatic "congratulatory hug" (apparently witnessed by a third-party) between Judge Lewis and Kinser, and Judge Lewis's setting of a temporary hearing that allowed Hall to maximize her "significant war chest and . . . economic advantage." *See id.* at 41–44. The motion asserted that because "Jordaan will be deprived of a fair trial in violation of the due process clauses of both the Texas and United States Constitutions if [Judge] Lewis were to preside," *id.* at 44, Judge Lewis should stand recused in favor of an "impartial" judge. *Id.* at 45.

On January 29, 2002, Judge Theo Bedard ("Judge Bedard") ruled on Hall's emergency motion, ordering the parties to "produce and deliver to the 330th Judicial District Court . . . any and all original tapes, copies of tapes, in any form, or transcripts of tapes which contain the voice of SYDNEY ANN HALL prior to . . . August 11, 1999," and that these items be "placed and sealed in the Dallas County District Clerk's safe." *See* Hall's Motion ¶ 5; Hall's Dismissal Appendix at 63–64. Judge Bedard further ordered that the prohibition on disseminating "audio tapes, copies of tapes[,] and the contents thereof on page [twenty-four] of [the] [d]ecree shall remain in full force and effect." *See* Hall's Motion ¶ 5; Hall's Dismissal Appendix at 64. On February 11, 2002, Judge Bedard ruled on Jordaan's recusal motion, denying it as "untimely" and "totally without merit." *See* Hall's Show Cause Reply at 5; Hall's Show Cause Appendix at 49–50. Jordaan did not appeal any of Judge Bedard's rulings. Hall's Motion ¶ 5.

---

**3.** The parties attended this mediation in an attempt to resolve a motion filed by Hall on January 8, 2002 to modify the parent-child relationship. *See* Hall's Dismissal Appendix at 40–46.

On March 31, 2003, Hall filed a second motion to hold Jordaan in contempt. *See* Hall's Show Cause Appendix at 51–62. Hall's second contempt motion asserted that Jordaan had violated the final divorce decree and related state court orders by failing to obtain health insurance coverage for his children, failing to pay his children's outstanding medical bills, continuing to make disparaging remarks about Hall, and unilaterally discontinuing the children's psychotherapy sessions. *See id.* at 52–59. The motion requested that the 330th District Court hold Jordaan in contempt and order that he be jailed—for up to six months—and/or required to pay a fine, that he pay the children's outstanding medical expenses plus interest, and that he pay Hall's reasonable attorney fees. *See id.* at 59.

One week later, on April 7, 2003, Jordaan, represented by Riley—his law partner and current wife[4]—filed this suit against Hall and Judge Lewis. *See* Docket Sheet. Jordaan's federal complaint alleged that the final decree's prohibitions on "disparaging remarks" and dissemination of "audio taped voice mail messages"—both of which the 330th District Court enjoined—constitute an impermissible "prior restraint" in violation of the First Amendment of the United States Constitution. *See* Original Complaint ¶¶ 4, 6, 21–22, 27–28. Subject matter jurisdiction was grounded solely on the basis of a federal question pursuant to 28 U.S.C. § 1331. *See id.* ¶ 4.[5] As relief, Jordaan asked this court, *inter alia,* to declare void certain orders of the 330th District Court, to order the judge of that court, Judge Lewis, to withdraw those orders, and to award him damages and reasonable attorney fees.[6] *See* Original Complaint at 11–

---

4. Although Riley signed the original complaint with the name "Patricia A. Riley" of Jordaan & Riley, PLLC, *see* Original Complaint at 12, she has signed subsequent pleadings and papers with the name "Patricia Riley Jordaan" or "Patricia Jordaan," *see, e.g.,* Plaintiff's First Amended Complaint, Request for Declaratory Judgment & Application for Injunctive Relief ("Amended Complaint") at 16; Memorandum of Plaintiff Jakes Jordaan in Opposition to Defendant Sydney Hall's Motion to Dismiss for Lack of Subject Matter Jurisdiction at 13, indicating that, in addition to being Jordaan's counsel and law partner, Riley is also his wife.

5. "The jurisdiction of this Court is based on 28 U.S.C. § 1331 in that this cause of action arises under the First Amendment of the United States Constitution. This cause of action pertains to 'prior restraints' imposed by the 330th Judicial District Court of Dallas County, Texas in violation of Plaintiff's First Amendment constitutional rights as hereinafter set forth ...." Original Complaint ¶ 4.

6. "WHEREFORE, Plaintiff requests this Court to:
(a) Enter a declaratory judgment pursuant to § 2201 of U.S.C. 28[sic] declaring that the orders described in paragraphs 21 and 22 herein be declared void as being violative of the Constitution of the United States;
(b) [Enter] [a] mandatory order of this court requiring Defendant Lewis to withdraw the orders described in paragraphs 21 and 22;
(c) [Enter] [a]n order permanently enjoining Defendant Hall and all others authorized by law to enforce orders from further efforts to enforce said orders;
(d) [Enter] [a] mandatory order of this court directing Defendant Lewis to return to Plaintiff the Seized Tapes, as described in paragraph 23;
(e) [Enter] [a] temporary restraining order and preliminary stay of further proceedings in the state court pertaining to the enforcement of orders described in paragraphs 21 and 22 pending final determination of the issue herein;
(f) [Award] [a]ctual damages in an amount to be determined;
(g) [Award] [p]unitive damages as the court deems appropriate;
(h) [Award] [r]easonable attorneys' fees ...."
Original Complaint at 11–12.

12; Memorandum Order, May 27, 2003 at 2.

On April 9, 2003, just two days after commencing his federal action, Jordaan filed a second motion to recuse Judge Lewis. *See* Hall's Show Cause Reply at 6; Hall's Show Cause Appendix at 147–172. Jordaan's motion asserted that, because Judge Lewis had been named as an "adverse party" in a related federal case, she simply could not "serve as an impartial and disinterested judge" and therefore should be recused. *See* Hall's Show Cause Appendix at 147–48. Jordaan additionally alleged that Judge Lewis had an "imputed" conflict of interest, engaged in *ex parte* communications, and circumvented an arbitration agreement. *See id.* at 148–53. At the end of his motion Jordaan also strategically attempted to reassert— through a wholesale "cut and paste" effort—each of the arguments contained in his first recusal motion, which, as mentioned previously, Judge Bedard had denied on February 11, 2002 as untimely and frivolous. *See id.* at 42–43, 49–50, 153–56.

On April 25, 2003, Jordaan amended his federal complaint and asserted for the first time that this court had subject matter jurisdiction not only under 28 U.S.C. § 1331 but also pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* (the "FAA"). *See* Amended Complaint ¶ 4; Docket Sheet. The amended complaint claimed that Hall violated the express terms of a July 2, 2002 arbitration agreement [7] by filing two contempt motions with the 330th District Court instead of pursuing arbitration.[8] *See* Amended Complaint ¶¶ 27–30. Jordaan's amended complaint requested that, in addition to the relief previously sought, this court enter a "mandatory order ... directing Defendant Lewis to stay all proceedings in the 330th Judicial District Court of Dallas County, Texas pending arbitration of such disputes in accordance with the terms of the Arbitration Agreement." *See id.* at 15.[9]

On May 27, 2003, after reviewing all pleadings and related documents then on file in this case, the court issued a memorandum order concluding that Riley and her firm likely violated Rule 11(b)(2) of the Federal Rules of Civil Procedure by "attempting to invoke the subject matter jurisdiction of this court contrary to the *Rooker–Feldman* doctrine" and ordering Riley, in consequence, to show cause, if any she had, why sanctions should not be imposed in accordance with Rule 11(c)(1)(B). *See* Memorandum Order, May 27, 2003 at 4; Docket Sheet. On May 29, 2003, Judge Lewis responded by filing a brief in support of sanctions [10] in which she

**7.** That arbitration agreement provides in relevant part:
   Any and all disputes or controversies between the parties, whether of law or fact of any nature whatsoever, arising from or respecting this the Agreed Final Decree of Divorce or this Agreed Order shall be decided by arbitration by the Judicial Arbitration Mediation Services, Inc. ("JAMS") in accordance with the rules and regulations of JAMS, or by any other body mutually agreed upon by the parties.
   Amended Complaint ¶ 27.

**8.** Curiously, Jordaan filed on April 10, 2003 a counter-motion for enforcement by contempt that would, by his own argument, violate the same arbitration agreement. *See* Hall's Show Cause Appendix at 173–77.

**9.** On May 16, 2003, Jordaan tendered a proposed second amended complaint in which the FAA was asserted as the *primary*—rather than co-equal—ground for subject matter jurisdiction over his dispute. *See* Plaintiff's Second Amended Complaint, Request for Declaratory Judgment & Application for Injunctive Relief ¶ 4, *attached to* Plaintiff's Motion & Notice of Motion for Leave to File an Amended Pleading. Leave to file this complaint, however, was never obtained.

**10.** Unbeknownst to the court at the time the May 27 memorandum order issued, Judge Lewis on May 5, 2003 sent Riley a letter and draft motion for sanctions, pursuant to Rule 11(c)(1)(A), advising her that the motion would be filed within twenty-one days after

requested reasonable attorney fees under Rule 11(c)(1)(A) and 28 U.S.C. § 1927. *See* Lewis's Sanctions Brief at 1, 7–8. On June 10, 2003, Hall filed a similar brief requesting monetary sanctions pursuant to Rule 11(c)(1)(A) and 28 U.S.C. § 1927. *See* Hall's Show Cause Reply at 1, 12. Hall's brief also stressed that, in addition to the alleged violation of Rule 11(b)(2), Riley violated Rule 11(b)(1) by filing Jordaan's complaint for various improper purposes. *See id.* at 2–4. Hall therefore requested that this court sanction Riley according to both Rule 11(b)(1) and (2). *See id.* at 4.

The court held the Rule 11 show cause hearing on June 11, 2003. After hearing from Riley and counsel for the defendants, as well as considering the written submissions of the parties and the entire record before it, the court concluded that Riley and her law firm had violated Rule 11 and imposed the following sanctions: (1) that Riley and her law firm, Jordaan & Riley, PLLC, should jointly and severally pay reasonable attorney fees to the defendants; (2) that Riley and her law firm should, within ten days of the hearing date, pay a fine in the amount of five thousand dollars to the clerk of this court; (3) that Riley's— and her law firm's—admission to practice before this court should be suspended until such time as the fine and the attorney fees awarded to the defendants had been paid; and (4) that Riley should stand committed

receipt unless Riley agreed to dismiss the action with prejudice prior to that deadline. *See* Defendant Lewis' Brief in Support of Sanctions ("Lewis's Sanctions Brief") at 1–2, Attachment A. Because the court issued its Rule 11 show cause order on the twentieth day following Riley's receipt of the draft motion and letter, Judge Lewis converted her motion into a brief in support of sanctions. *See* Lewis's Sanctions Brief at 1–2; Memorandum Order, May 27, 2003; *see also* Docket Sheet.

if she failed to timely pay the fine. *See* Order, June 11, 2003; Show Cause Transcript ("Transcript") at 22–26. The court now details the underlying Rule 11 conduct and the basis for selecting the sanctions imposed.[11]

## II. *ANALYSIS*

### A. *The Rule 11 Conduct*

Federal Rule of Civil Procedure 11 provides in relevant part:

**(b) Representations to Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney ... is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law[.]

\*      \*      \*      \*      \*      \*

FED. R. CIV. P. 11(b).

### 1. *Riley's Violation of Rule 11(b)(1)* [12]

11. Concurrently with its ruling on the Rule 11 violations and imposition of sanctions, the court dismissed Jordaan's case for lack of subject matter jurisdiction. *See* Order, June 11, 2003; Transcript at 23.

12. This violation was not discussed in the Memorandum Order of May 27, 2003 because the court was not aware of the events then occurring—and which had recently occurred—in the 330th District Court. Those events came to the court's attention only after the defendants filed their briefs and support-

■ Rule 11(b)(1) prohibits an attorney from filing a federal action for any improper purpose. *See* FED. R. CIV. P. 11(b)(1). Consequently, where it is objectively ascertainable that an attorney has submitted a paper to the court for an improper purpose, sanctions may be imposed. See *Whitehead v. Food Max of Mississippi, Inc.*, 332 F.3d 796, 805 (5th Cir.2003); *Matta v. May*, 118 F.3d 410, 415 (5th Cir.1997); *Sheets v. Yamaha Motors Corporation*, 891 F.2d 533, 537 (5th Cir.1990); *National Association of Government Employees, Inc. v. National Federation of Federal Employees*, 844 F.2d 216, 224 (5th Cir.1988).

■ The record in this case reflects that Riley violated Rule 11(b)(1) by filing Jordaan's original complaint for a number of improper purposes. First, it appears that the original complaint was filed for the purpose of delaying the state court's hearing of Hall's contempt motion. As stated above, Hall filed her second motion for enforcement by contempt on March 31, 2003, in which she asserted that Jordaan had not obeyed certain terms of the final divorce decree and related state court orders. *See* Hall's Show Cause Appendix at 51–61. Approximately one week later, Riley filed Jordaan's original complaint in this case, which had the effect of halting the state court proceedings and delaying a determination of the contempt motion. *See* Hall's Show Cause Reply at 4–7. It is highly unlikely that this disruption of the state court proceedings was merely an unintended consequence of Jordaan's filing this federal suit. A more likely explanation, instead, is that Jordaan's original complaint was filed, at least in part, for the purpose of delaying a hearing on the contempt motion.

Second, it appears that Jordaan's original complaint was filed for the purpose of manufacturing grounds to force Judge Lewis's recusal. On April 9, 2003, scarcely two days after submitting Jordaan's federal complaint, Riley filed with the state court a second motion to recuse Judge Lewis. *See* Hall's Show Cause Reply at 6; Hall's Show Cause Appendix at 147–172; Transcript at 20. The date of filing of the second recusal motion, coupled with its length, strongly suggests that it was drafted contemporaneously with the original complaint in this case. One of the motion's principal grounds for recusal of Judge Lewis is that she had been named as an "adverse party" in a related "federal action" and, therefore, could not "serve as an impartial and disinterested judge." *See* Hall's Show Cause Appendix at 147–48. The motion also attempted to reassert the same grounds for recusal that Judge Bedard had already rejected in ruling on the first motion to recuse. *See* Hall's Show Cause Reply at 6; Hall's Show Cause Appendix at 42–43, 49–50, 153–56. The timing, length, and content of this recusal motion indicate that the original complaint was filed *in order to force* Judge Lewis's recusal on the basis of a carefully crafted conflict of interest.

Finally, Jordaan's original complaint appears to have been filed for the additional purpose of circumventing certain restrictions in the final divorce decree. As previously mentioned, the final decree expressly prohibits public dissemination of certain audio taped voice mail messages, or transcripts made therefrom, containing statements made by Hall while she was suffering from clinical depression. *See* Hall's Show Cause Reply at 4–5; Hall's Show Cause Appendix at 12, 24. Jordaan's federal complaint challenges this restriction as a "prior restraint" in violation of the First Amendment. *See* Original Complaint ¶ 4, 27–30. However, instead of om-

ing documents seeking sanctions under Rule 11.

itting the statements at issue or, at the very least, submitting them under seal, Jordaan's complaint purports to quote them *verbatim* as a factual allegation. *See* Original Complaint ¶ 11. Consequently, the complaint circumvents the commands of the final decree by incorporating the prohibited statements in a public document. Even the dismissal of Jordaan's federal action will not undo such dissemination. The court is persuaded that this result was not inadvertent.

Presumably, Riley and Jordaan are experienced attorneys familiar with the ramifications of filing a federal case. In light of that familiarity, the court rejects any conclusion that the chain of events surrounding the filing of this case arose through mere happenstance. Rather, viewing these events in their entirety, the court concludes that both Riley and Jordaan, who were dissatisfied with the rulings of the state court, sought the intervention of this court for the purposes of delaying or obstructing a contempt hearing, disqualifying a state court judge, and circumventing the restrictions contained in a final divorce decree. Riley therefore signed and filed the original complaint in clear violation of Rule 11(b)(1).

### 2. *Riley's Violation of Rule 11(b)(2)*

■ Federal Rule of Civil Procedure 11(b)(2) prevents an attorney from filing a federal complaint that is not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law." *See* FED. R. CIV. P. 11(b)(2). In determining whether an attorney has met this obligation, the court applies the "snapshot rule," which focuses on the attorney's conduct as of the moment the document was signed. *Thomas v. Capital Security Services, Inc.*, 836 F.2d 866, 874 (5th Cir.1988) (en banc) ("Like a snapshot, Rule 11 review focuses upon the instant when the picture is taken—when the signature is placed on the document."); accord *Edwards v. General Motors Corporation*, 153 F.3d 242, 245 (5th Cir.1998); *Federal Deposit Insurance Corporation v. Calhoun*, 34 F.3d 1291, 1296 (5th Cir.1994); *Childs v. State Farm Mutual Automobile Insurance Company*, 29 F.3d 1018, 1024 and n. 18 (5th Cir.1994); *Smith v. Our Lady of the Lake Hospital, Inc.*, 960 F.2d 439, 444 (5th Cir.1992); *Jennings v. Joshua Independent School District*, 948 F.2d 194, 197 (5th Cir.1991), *cert. denied*, 504 U.S. 956, 112 S.Ct. 2303, 119 L.Ed.2d 226 (1992). Once the snapshot has been taken, the court measures Rule 11 compliance under an objective standard of reasonableness. *Whitehead*, 332 F.3d at 804–05; *Childs*, 29 F.3d at 1024; *United States v. Alexander*, 981 F.2d 250, 252 (5th Cir.1993); *Smith*, 960 F.2d at 444. Consequently, "[w]here a reasonable amount of research would have revealed to the attorney that there was no legal foundation for the position taken, Rule 11 sanctions will be imposed." *Collin County, Texas v. Homeowners Association for Values Essential to Neighborhoods (HAVEN)*, 654 F.Supp. 943, 954 (N.D.Tex.1987) (citation omitted).

■ A careful review of Jordaan's original complaint, which Riley signed and submitted, reveals that the instant case was inextricably intertwined with the state court divorce decree and that much of the relief requested is a review and modification of that decree. Specifically, the complaint alleges that certain orders of the 330th District Court—which prohibit the making of "disparaging remarks" and dissemination of Hall's "audio taped voice mail messages"—constitute a "prior restraint" in violation of the First Amendment. *See* Original Complaint ¶¶ 4, 6, 21–22, 27–28. Part of the relief sought by the complaint is that this court should declare these orders of the 330th District Court void and require the judge of that court,

Judge Lewis, to withdraw those orders. *See* Original Complaint at 11–12.

■ It is hornbook law that no court of the United States—other than the United States Supreme Court—can entertain a proceeding to reverse, modify, or otherwise engage in an appellate review of, a state court decision. See *Johnson v. De-Grandy,* 512 U.S. 997, 1005–1006, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994); *Atlantic Coast Line Railroad Company v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 287, 296, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970); *Matter of Reitnauer,* 152 F.3d 341, 343 (5th Cir.1998); *Brown v. Chastain,* 416 F.2d 1012, 1013–14 (5th Cir. 1969), *cert. denied,* 397 U.S. 951, 90 S.Ct. 976, 25 L.Ed.2d 134 (1970); see also *Martin v. Hunter's Lessee,* 14 U.S. (1 Wheat.) 304, 351, 4 L.Ed. 97 (1816) (first case recognizing the scope of the Supreme Court's authority to review state court judgments); 28 U.S.C. § 1257 (statute establishing Supreme Court jurisdiction to review the "[f]inal judgments or decrees rendered by the highest court of a State"). It is this jurisdictional rule which forms the basis of the *Rooker–Feldman* abstention doctrine.[13]

■ Under *Rooker–Feldman,* a federal district court simply lacks jurisdiction to entertain collateral attacks on a state court judgment.[14] *Liedtke v. State Bar of Texas,* 18 F.3d 315, 317 (5th Cir.), *cert. denied,* 513 U.S. 906, 115 S.Ct. 271, 130 L.Ed.2d 189 (1994). This jurisdictional bar is not limited to actions in federal court that explicitly seek review of a state court deci-

sion, but also extends to those "in which the constitutional claims presented ... are inextricably intertwined with the state court's grant or denial of relief." *Hale v. Harney,* 786 F.2d 688, 691 (5th Cir.1986) (internal quotation marks and brackets omitted); see also *Johnson,* 512 U.S. at 1005–1006, 114 S.Ct. 2647 (under *Rooker–Feldman,* "a party losing in state court is barred .from seeking what in substance would be appellate review of the state judgment in a [federal] district court"). Moreover, the Fifth Circuit has repeatedly held that a plaintiff cannot circumvent the *Rooker–Feldman* doctrine merely by recasting a complaint in the form of a federal civil rights action. See *Chrissy F. By Medley v. Mississippi Department of Public Welfare,* 995 F.2d 595, 598–99 (5th Cir. 1993), *cert. denied,* 510 U.S. 1214, 114 S.Ct. 1336, 127 L.Ed.2d 684 (1994); *Hale,* 786 F.2d at 690–91; *Reed v. Terrell,* 759 F.2d 472, 473 (5th Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 343, 88 L.Ed.2d 290 (1985); *Hagerty v. Succession of Clement,* 749 F.2d 217, 220 (5th Cir.1984), *cert. denied,* 474 U.S. 968, 106 S.Ct. 333, 88 L.Ed.2d 317 (1985); *Sawyer v. Overton,* 595 F.2d 252, 252 (5th Cir.1979); *Williams v. Tooke,* 108 F.2d 758, 759 (5th Cir.), *cert. denied,* 311 U.S. 655, 61 S.Ct. 8, 85 L.Ed. 419 (1940).

■ In the case *sub judice,* Jordaan's original complaint does not mount a general challenge to the constitutionality of a state statute or rule. See *Reed,* 759 F.2d at 473 (citing *Feldman,* 460 U.S. at 483, 103 S.Ct. 1303); *Musslewhite v. State Bar of Texas,* 32 F.3d 942, 945–46 (5th Cir.

---

**13.** This doctrine is named after two decisions of the United States Supreme Court, *Rooker v. Fidelity Trust Company,* 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923) (holding that the jurisdiction of the federal district courts is strictly original), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476, 482–83, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) (holding that the federal district

courts do not have authority to review state court judgments).

**14.** The *Rooker–Feldman* doctrine has been described as the "jurisdictional transmutation of *res judicata* doctrine." See, *e.g., Narey v. Dean,* 32 F.3d 1521, 1524 (11th Cir.1994); *see also* 18B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure 2d § 4469.1 (2002) at 152.

1994), *cert. denied,* 515 U.S. 1103, 115 S.Ct. 2248, 132 L.Ed.2d 256 (1995). Nor does it present this court with a federal claim for adjudication. Rather, the complaint is nothing more than a thinly veiled attempt to circumvent the state appellate process and to collaterally attack—in the guise of a federal civil rights action—the validity of a state court divorce decree and other related orders. See *Chrissy F.,* 995 F.2d at 599; *Hale,* 786 F.2d at 690–91; *Brinkmann v. Johnston,* 793 F.2d 111, 113 (5th Cir.1986); *Kimball v. The Florida Bar,* 632 F.2d 1283, 1284 (5th Cir.1980); *Almon v. Sandlin,* 603 F.2d 503, 506 (5th Cir. 1979). Consequently, the claims contained in Jordaan's original complaint are "inextricably intertwined" with the state court divorce decree so that this court lacks subject matter jurisdiction to entertain them. See *Feldman,* 460 U.S. at 482 n. 16, 103 S.Ct. 1303; *Hale,* 786 F.2d at 691; *Brinkmann,* 793 F.2d at 113. A reasonable amount of research certainly would have revealed to Riley the jurisdictional bar to filing such claims in a United States district court.

In explanation of her conduct, Riley offers two unconvincing arguments. First, Riley maintains that she sincerely believed that the *Rooker–Feldman* doctrine was inapplicable when she signed and filed Jordaan's original complaint. *See* Brief of Plaintiff Jakes Jordaan in Response to the Court's Memorandum Order of May 28[sic], 2003 ("Plaintiff's Show Cause Response") at 2, 6–17; Transcript at 5. At the show cause hearing, Riley argued that "it was our position that *Rooker–Feldman* did not apply, that it never applied." *See* Transcript at 5. However, Riley's subjective belief that *Rooker–Feldman* somehow

"did not apply" to the original complaint is simply insufficient to protect her from Rule 11 sanctions. See *Childs,* 29 F.3d at 1024; *American Airlines, Inc. v. Allied Pilots Association,* 968 F.2d 523, 529 (5th Cir.1992); *Robinson v. National Cash Register Company,* 808 F.2d 1119, 1127 (5th Cir.1987). An objectively reasonable attorney would have recognized the long-standing rule that a federal district court lacks subject matter jurisdiction to review and modify a state court divorce decree. See *Hale,* 786 F.2d at 690–91.

Second, Riley contends that, because she amended the original complaint to include the FAA upon learning of the *Rooker–Feldman* violation, any jurisdictional defect in the complaint was cured and thus the basis for Rule 11 sanctions no longer obtained. *See* Plaintiff's Show Cause Response at 14–17; Transcript at 4–6. This argument is unavailing because of this circuit's "snapshot rule." [15] However, even if the court were to assume, *arguendo,* that the "snapshot rule" did not exist or that some exception to that rule were available to Riley, Riley has never asserted a proper basis for federal subject matter jurisdiction. It is well settled that the FAA is not an independent source of federal jurisdiction and that a party seeking relief under that statute must demonstrate the existence of a federal question or diversity jurisdiction. See *Bank One, N.A. v. Shumake,* 281 F.3d 507, 513 (5th Cir.), *cert. denied,* 537 U.S. 818, 123 S.Ct. 94, 154 L.Ed.2d 25 (2002); *Rio Grande Underwriters, Inc. v. Pitts Farms, Inc.,* 276 F.3d 683, 685 (5th Cir.2001); *Commercial Metals Company v. Balfour, Guthrie, and Company,* 577 F.2d 264, 268–69 (5th

**15.** Riley repeatedly avoided this issue at the show cause hearing by shifting to a discussion of whether or not *Rooker–Feldman* applies when a claim under the FAA has been alleged. *See* Transcript at 5–14. It is undisputed, however, that the FAA was not alleged as a basis for jurisdiction in the original complaint and that the FAA initially appeared in Jordaan's first amended complaint, filed on April 25, 2003. *Compare* Original Complaint ¶ 4, *with* Amended Complaint ¶ 4; *see also* Docket Sheet.

Cir.1978); see also *Whiteside v. Teltech Corporation*, 940 F.2d 99, 102 (4th Cir. 1991); *Robert Lawrence Company v. Devonshire Fabrics, Inc.*, 271 F.2d 402, 408–09 (2d Cir.1959), *cert. granted*, 362 U.S. 909, 80 S.Ct. 682, 4 L.Ed.2d 618 (1960), *cert. dismissed*, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960); 9 U.S.C. § 4. While the amended complaint purports to present a federal question[16] by reasserting that certain orders of the state court constitute a "prior restraint" in violation of the First Amendment, *see* Amended Complaint ¶ 4, it appears that Jordaan contractually waived that right by voluntarily signing the *agreed* final divorce decree. *See* Hall's Show Cause Appendix at 28; see also *Gonzalez v. County of Hidalgo, Texas*, 489 F.2d 1043, 1046 (5th Cir. 1973) (holding that an individual may contractually waive a constitutional right so long as such waiver is voluntary and intelligent); accord *Hatfield v. Scott*, 306 F.3d 223, 229–30 (5th Cir.2002); *Carter v. Sea Land Services, Inc.*, 816 F.2d 1018, 1021 (5th Cir.1987); *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1263–64 (5th Cir.1983); *Murray v. Wainwright*, 450 F.2d 465, 469 (5th Cir.1971); *Ralston v. Cox*, 123 F.2d 196, 198 (5th Cir.1941), *cert. denied*, 315 U.S. 796, 62 S.Ct. 488, 86 L.Ed. 1197 (1942). Consequently, even if Riley could somehow escape application of the "snapshot rule," the amended complaint still fails to assert a valid basis for federal subject matter jurisdiction and does not fill the jurisdictional void left by *Rooker–Feldman*.[17]

■ Accordingly, the court concludes that Riley violated Rule 11 when she signed and filed, on behalf of Jordaan—her husband and law partner—a federal complaint that asserted claims completely foreclosed by well established law and that were not warranted by a good faith argument for the extension, modification, or reversal of existing law. *Sheets*, 891 F.2d at 536; *Jennings v. Joshua Independent School District*, 877 F.2d 313, 320 (5th Cir.1989), *cert. denied*, 496 U.S. 935, 110 S.Ct. 3212, 110 L.Ed.2d 660 (1990). Having determined that Riley violated Rule 11(b)(1) and (2), the court now turns to the issue of sanctions.

### B. Sanctions Imposed Upon Riley and Her Firm

■ After a violation of Rule 11(b) is established, the rule empowers the court to impose appropriate sanctions upon the attorneys, law firms, or parties responsible for the violation. *Childs*, 29 F.3d at 1027; *Jennings*, 948 F.2d at 197; *see also* FED. R. CIV. P. 11(c)(1)(A) and (B).[18] The purpose of sanctions under Rule 11 is to deter baseless filings and streamline the administration of justice. *Cooter & Gell v. Hartmarx Corporation*, 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); *Spiller v. Ella Smithers Geriatric Center*, 919 F.2d 339, 345 (5th Cir.1990). Sanctions should therefore be educational and reha-

---

16. Where, as here, all named parties to a federal action are citizens of the same state, the plaintiff must allege a federal question in order to invoke subject matter jurisdiction under the FAA. *Rio Grande*, 276 F.3d at 685.

17. Riley appears to have engaged in further sanctionable conduct by signing and filing an amended complaint that, like the original complaint, improperly invoked this court's subject matter jurisdiction. Indeed, Riley expressly admitted knowing of the independent federal jurisdiction requirement imposed by section 4 of the FAA, 9 U.S.C. § 4. *See* Plaintiff's Show Cause Response at 4; Transcript at 8.

18. The court reiterates that, in addition to the court raising the issue of sanctions under Rule 11(b)(2), both defendants requested monetary sanctions pursuant to Rule 11(b)(1). *See* Hall's Show Cause Reply at 4, 12; Lewis's Sanctions Brief at 1, 7–8.

bilitative in character and, as such, tailored to the particular wrong. *Topalian v. Ehrman,* 3 F.3d 931, 936–37 (5th Cir.1993); *Thomas,* 836 F.2d at 877. The Fifth Circuit has long held that the district court has broad discretion in fashioning an appropriate sanction. See *Mendoza v. Lynaugh,* 989 F.2d 191, 195–96 (5th Cir. 1993); *Willy v. Coastal Corporation,* 915 F.2d 965, 968 (5th Cir.1990), *aff'd,* 503 U.S. 131, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992); *Thomas,* 836 F.2d at 871–72. In ordering Rule 11 sanctions, the court must address: (1) the specific conduct giving rise to its sanctions order; (2) the expenses or costs caused by the violation of the rule; (3) whether or not the costs or expenses were reasonable, as opposed to self-imposed, mitigable, or the result of delay in seeking court intervention; and (4) whether or not the sanctions imposed are the least severe sanction adequate to achieve the purposes of Rule 11. See *Topalian,* 3 F.3d at 936–37; *Thomas,* 836 F.2d at 877–78; *Seawright v. Charter Furniture Rental, Inc.,* 39 F.Supp.2d 795, 807–08 (N.D.Tex.1999). Each of these factors will be discussed in turn.

■ First, as set forth above, Riley filed the complaint in this case for a number of improper purposes, in violation of Rule 11(b)(1); in that complaint, she asserted claims unwarranted by well established existing law, in violation of Rule 11(b)(2). The claims were not only unmeritorious, but this court lacked power to adjudicate them. Thus, each and every dollar of attorney's fees incurred by the defendants in responding to this action was a dollar "wasted." *Seawright,* 39 F.Supp.2d at 807; see also *Doyle v. United States,* 817 F.2d 1235, 1237 (5th Cir.), *cert. denied,* 484 U.S. 854, 108 S.Ct. 159, 98 L.Ed.2d 114 (1987); *Brown v. Nationwide Mutual Insurance Company,* 805 F.2d 1242, 1244 (5th Cir.1986).

Second, the costs and expenses incurred by the defendants were reasonable, rather than self-imposed, mitigable, or the result of delay. In this case, the defendants alerted Riley early on that the claims contained in the original complaint were legally unfounded. See *Childs,* 29 F.3d at 1028 (holding that one factor in determining whether attorney fees were "reasonable" is whether the party seeking sanctions promptly notified the offending party and the court of the Rule 11 violation); accord *Topalian,* 3 F.3d at 937; *Chapman & Cole v. Itel Container International B.V.,* 865 F.2d 676, 684 (5th Cir.), *cert. denied,* 493 U.S. 872, 110 S.Ct. 201, 107 L.Ed.2d 155 (1989). On April 29, 2003, approximately three weeks after the filing of Jordaan's original complaint, each defendant moved to dismiss the complaint for lack of subject matter jurisdiction, citing *Rooker–Feldman.* See Hall's Motion ¶ 6; Defendant Lewis' Motion, With Brief, to Dismiss at 5–6. On May 5, 2003, Judge Lewis sent Riley a letter and draft motion for sanctions advising her that the motion would be filed with the court unless Riley agreed to dismiss the action with prejudice within the twenty-one day grace period provided by Rule 11(c)(1)(A). *See* Lewis's Sanctions Brief at 1–2, Attachment A. Despite such notice, Riley refused to withdraw the complaint and, instead, filed an amended complaint, which continued to increase the cost of mounting a defense. Thus, the court finds that the amount of attorney fees incurred by the defendants in this matter is directly attributable to the obdurate refusal of Riley and Jordaan to acknowledge the futility of the claims asserted in the original complaint. The court further finds that none of the actions taken by the defendants in responding to this lawsuit was unnecessary or, stated another way, it was reasonable for the defendants to do all of the things they did to defend themselves against Jordaan's federal action.

Finally, the sanctions imposed on Riley and her firm were the least severe sanctions adequate to achieve the purposes of Rule 11. Here, Riley filed a legally frivolous federal complaint as a means of collaterally attacking a state court divorce decree and initiating yet another court battle with Hall, Jordaan's ex-wife. The complaint Riley signed appears to be a duplicitous measure to undermine the state court proceedings and to disseminate statements about Hall in direct violation of the final divorce decree and related state court orders. As a result, Jordaan's frivolous lawsuit not only forced the defendants to needlessly incur attorney fees, but also consumed a significant amount of this court's limited resources. An admonishment or public reprimand alone would not have been sufficient to deter future filings of this nature. Rather, a clear message needed to be sent to Riley—and any others who might be contemplating a similar course of conduct—that frivolous lawsuits like the one at bar will not be tolerated. Consequently, after considering the universe of possible sanctions, the court concluded that a monetary sanction—including attorney fees and a fine—was necessary to make Hall and Judge Lewis whole, to reimburse the public for wasting this court's scarce resources, and to deter Riley and her firm from such conduct in the future. See *Mercury Air Group, Inc. v. Mansour,* 237 F.3d 542, 548 (5th Cir.2001); *Childs,* 29 F.3d at 1027–28; *Akin v. Q–L Investments, Inc.,* 959 F.2d 521, 535 (5th Cir.1992); *Thomas,* 836 F.2d at 877–78; *Bullard v. Chrysler Corporation,* 925 F.Supp. 1180, 1191 (E.D.Tex. 1996); see also *Union Planters Bank v. L & J Development Company, Inc.,* 115 F.3d 378, 386 (6th Cir.1997). Additionally, to ensure payment of these sanctions, the court concluded that Riley and her law firm, Jordaan & Riley PLLC, should be suspended from admission to practice be-fore this court until such time as the fine and reasonable attorney fees were paid, with Riley to stand committed for any failure to pay the fine within the time prescribed. The court also concluded that this memorandum order should be published for the purpose of educating litigants and the bar about the requirements of Rule 11, as well as for the purpose of deterring a repetition of this conduct by Riley or others. This combination of sanctions is the least severe, under the circumstances, adequate to achieve the purposes of Rule 11.

## III. *CONCLUSION*

In sum, the court has determined that the claims asserted in Jordaan's original complaint were legally frivolous and presented for an improper purpose, so that Riley violated Rule 11 by signing and filing that complaint. As a result, sanctions have been imposed upon both Riley and her law firm. This opinion should stand as a warning to Riley, as well as other litigants and their attorneys, that sanctions will be invited by any attempt to appeal to this court—under the guise of a federal civil rights action or otherwise—rulings in a family law case. See *Brinkmann,* 793 F.2d at 113; *Hale,* 786 F.2d at 690–692.

**SO ORDERED.**